JAMES H. WARNER, Respondent, *v.* EDWARD W. SOUTHALL, Appellant.

SLANDER — WHEN QUESTION WHETHER WORDS IMPORT A CRIME IS FOR THE JURY. Where in an action for slander, words proven on the trial to have been uttered by the defendant are ambiguous and in the connection in which they were used are capable of a construction imputing arson to the plaintiff, and they might have been so understood, a question of fact is presented for the jury as to whether defendant intended to charge the plaintiff with such crime.

*Warner* v. *Southall*, 31 App. Div. 375, affirmed.

(Argued December 12, 1900; decided February 5, 1901.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, made June 18, 1898, which reversed an order of Special Term denying a motion for a new trial, made on a case and exceptions, after a judgment in favor of defendant, entered upon a decision of the court at a Trial Term, and granted a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William Carter* and *Charles D. Newton* for appellant. The motion for a nonsuit and dismissal of the complaint was properly granted by the trial court. (Townshend on Sland. & Lib. [2d ed.] 481, § 286; *Green* v. *Telfair*, 20 Barb. 11; *Kingsbury* v. *Bradstreet Co.*, 35 Hun, 212; *Matthews* v. *Beach*, 5 Sandf. 256; *Woodruff* v. *Bradstreet Co.*, 116 N. Y. 217; *M'Kinley* v. *Rob*, 20 Johns. 351; *Hankinson* v. *Bilby*, 16 M. & W. 442; *Coleman* v. *Playsted*, 36 Barb. 26.)

*Henry B. Coman* and *Edward P. Coyne* for respondent. The decision of the Appellate Division, that it was a question of fact for the jury to determine whether or not the defendant intended to charge the plaintiff with the commission of a crime by the language employed, was correct. (*Goodrich*

v. *Woolcott*, 3 Cow. 231 ; *Ronnie* v. *Ryder*, 28 N. Y. S. R.
141 ; *Sanderson* v. *Caldwell*, 45 N. Y. 398 ; *Hayes* v. *Ball*,
72 N. Y. 418.)

PARKER, Ch. J.    Some time prior to November, 1895, the
plaintiff and defendant entered into a contract for the exchange
of real estate, and before the expiration of the period at which
the conveyances were to be made some barns upon the lands
of the defendant, which were in part the subject of the con-
tract, were destroyed by fire.    Subsequently, the defendant
made some comments, indicating that the fire was of incen-
diary origin, and in conversations made such use of the plaintiff's
name as led the latter to bring this action for slander, and the
complaint, after stating what it is claimed the defendant said,
alleges that thereby the defendant charged the plaintiff with
having committed the crime of arson in the second degree.
The answer put in issue the allegations of the complaint ;
alleged the making of a contract for the exchange of real
estate which was a very favorable one to the defendant; that
the barns were destroyed by fire which, in the belief of the
defendant, was of incendiary origin ; that immediately after-
wards the plaintiff stated to various people that now he could
get out of carrying out the contract, and, subsequently, he
did attempt to avoid the contract on the ground that the barns
had been burned, and that such reports and information con-
cerning the fire came to the said defendant from the neighbors
and acquaintances of the plaintiff, as induced him to believe
the words spoken by him to be true when he uttered them,
but that he had no malice toward the plaintiff or wish to do
him any injury in his good name or otherwise.

The case coming on for trial and several witnesses having
been sworn on the part of the plaintiff, the defendant at the
close of the plaintiff's case moved for a nonsuit, which was
granted, the court being of the opinion that the words were
not actionable.    At the Appellate Division a contrary con-
clusion was reached and a new trial ordered.

The defendant on this appeal contends that the words

proven upon the trial to have been uttered were not ambiguous or uncertain, and do not permit in their construction, connection or application of more than one interpretation, and, hence, the question presented became one of law for the court, which was properly decided by the Special Term. The respondent insists that they were at least capable of a construction that would impute arson, and that they were understood in that sense.

We understand the rule to be settled in this court, as expressed in *Hayes* v. *Ball* (72 N. Y. 418), that " If the words are ambiguous and capable of two constructions, one imputing larceny and the other not, it is for the jury to determine in what sense they were understood." So, we are to inquire whether in the connection in which the words proved were used by the defendant, they were capable of a construction imputing arson to the plaintiff, and whether they might have been so understood, and if the answer be in the affirmative, it follows that the Appellate Division rightly held that the case should have gone to the jury.

The witness Saxton, in response to a request by counsel that he state the conversation had with the defendant, said : " Well, as I understood it, he said that if the reports in circulation were true, he thought that Warner knew as much about how the fire occurred as anybody; * * * he said something about a man down where Warner kept his horse ; he said somebody, I don't know who it was now, said Warner's horse was not in the barn at midnight when he came home that night."

The witness Cottrell testified : " I came along there and asked him how the grapes were, and he said : ' They got scorched some time ago ; ' and I asked him how that was, and he said the barns were burned down, and I said : ' How did they get afire ? ' and he says : ' I suppose they were set afire ; ' * * * and I asked him if he had got suspicions about the fire, and he said Jim Warner was over on the south road that night ; * * * he said he thought Jim Warner must know something about it ; the conversation lasted five or ten

minutes; he acted a little bit excited." On cross-examination he said: " I asked him how they came to get afire, and he said he thought they were set afire;   *   *   *   and he said Warner was up on that road that night; that the horse wasn't home that night.

" Q. Didn't he tell you that Eagan said that the horse wasn't in the barn ?   A. I believe he did, yes.

" Q. That is what he told you about the horse ?   A. Yes, that is about all that I can recollect.

" Q. Let me see if I understand you ; when you asked him if he had any suspicion, he said that Warner was seen over on the south road, and that Eagan said his horse was not in the barn at 12 o'clock that night; is that the substance of what he said to you ?   A. That is about all I recollect; I wasn't there but a few minutes talking with him.   *   *   *

" Q. Then I will ask you if the substance of the conversation, after he told you that Warner was seen over on the middle road, that he didn't say to you he knew as much about the fire as anybody ?   A. He didn't put any ' reports ' in ; he said Warner was over on the middle road that night, or seen there, and probably knew more about it than anybody else."

Several other witnesses were called, who testified to conversations with the defendant, in which the latter said if the reports were true, Warner knew as much about the fire as anybody else, but we have made an extract from the testimony of the witness most favorable to the plaintiff, and we do not think that it can be said that a verdict of the jury, founded upon a determination that the defendant, by the language used, intended to impute to the plaintiff the burning of the building, and that it was so understood by the persons to whom the remarks were addressed, could be said to be unsupported by evidence, for, according to the witness Cottrell, the defendant, after stating that the barns were burned and expressing his opinion that they were set on fire, was then asked if he had any suspicions, and to that question he replied, in substance, that Jim Warner was over on the south road that night and that he thought Jim Warner must know something about it.

The inquiry was guarded; it did not ask of the defendant who committed the offense, but it attempted to get from him the nature of his suspicions, if he had any, and the answer not only showed that he had suspicions and who was the subject of them, but also marshaled some facts tending to show that there was something more than suspicion in this case, namely, evidence, circumstantial in character, it is true, but still worthy of consideration and pointing always in but one direction — towards this plaintiff.

The order should be affirmed, and judgment absolute ordered for the plaintiff on the stipulation, with costs.

GRAY, O'BRIEN, HAIGHT, LANDON, CULLEN and WERNER, JJ., concur.

Order affirmed.