(86 App. Div. 76.)

BROWN v. SMALLWOOD.

(Supreme Court, Appellate Division, Fourth Department. July 7, 1903.)

1. MALICIOUS PROSECUTION—EVIDENCE—NEWSPAPER ARTICLES.
    Plaintiff in an action for malicious prosecution may not give in evidence newspaper articles, which, in addition to the facts of his indictment, arrest, and admission to bail, give his version of the transaction, which, if true, exonerated him from all blame, and indicated that defendant had caused the indictment to be found without probable cause, and maliciously.

2. SAME—FINANCIAL CIRCUMSTANCES OF DEFENDANT.
    Plaintiff in an action for malicious prosecution may not give evidence of defendant's financial circumstances.

Appeal from Trial Term, Erie County.

Action by M. Fillmore Brown against Wilbur F. Smallwood for malicious prosecution. From a judgment for plaintiff on a verdict, and from an order denying a motion on the minutes for a new trial, defendant appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

Eugene M. Bartlett, for appellant.
Charles A. Dolson, for respondent.

McLENNAN, J. The facts, so far as material, may be summarized as follows: The plaintiff, who resided with his wife, Elizabeth T. Brown, was a lawyer engaged in the practice of his profession in the city of Buffalo, N. Y. On the 11th day of January, 1897, the Citizens' Bank of Le Roy, N. Y., of which the defendant was president, issued to Elizabeth T. Brown a certificate for 10 shares of the capital stock of the bank, of the face value of $100 each. On the back of the certificate was a blank assignment and power of attorney. On January 26, 1897, this certificate was pledged to the bank as security for the payment of a note of $500, indorsed by Mrs. Brown, and she then signed her name at the bottom of the written assignment upon the certificate. The blank spaces therein were left blank. The certificate of stock was continued as a pledge for various loans made by the plaintiff upon the notes made by himself and his wife until March, 1898, when the then total indebtedness was paid. The certificate, however, continued to remain in the possession of

¶ 2. See Malicious Prosecution, vol. 33, Cent. Dig. § 150.

the bank until April 4, 1898, when the plaintiff procured it from the defendant, Smallwood. At that time the assignment upon the back of the certificate, as we have seen, was signed by Mrs. Brown, the wife of the plaintiff, but no name was inserted in the blank as the assignee of the same. Then, or about that time, the plaintiff's wife being absent from home, he, without the knowledge or authority of his wife, filled in all the blank spaces in the assignment, so that upon its face it appeared that it had been transferred to him by his wife. On the 8th day of May, 1898, the plaintiff took the certificate to the bank, and pledged it to secure a loan of $150 upon a promissory note made by himself and his wife. At that time the name of the plaintiff was erased in the assignment, and the name of the defendant was inserted in its place by the plaintiff. The certificate of stock was again pledged by the plaintiff to secure the payment of various loans during the following months of June, July, and August upon promissory notes made by the plaintiff and his wife, with her knowledge and consent. So that on the 3d day of September, 1898, the certificate of stock was held by the bank as collateral security for the payment of these loans on promissory notes amounting in the aggregate to the sum of $230.15. On that day the plaintiff, being in need of more money, applied to the defendant, Smallwood, the president of the bank, for an additional sum of money on such certificate of stock. Some question was raised by the defendant as to the plaintiff's ownership, or his authority to pledge or sell or transfer the stock, and the plaintiff thereupon made and delivered to the defendant the following statement, which was duly signed and sworn to by the plaintiff:

"M. Fillmore Brown, being duly sworn, says that he is the agent of Elizabeth T. Brown, his wife, and is authorized by her to dispose of and sell, in any manner he may choose, the ten shares of stock of the Citizens' Bank of Le Roy."

The defendant claims that at the time such affidavit was made he believed the same to be true, and believed that it correctly stated and represented the plaintiff's rights and authority in respect to the certificate of stock in question, and that he relied upon the same. Upon the delivery of such affidavit, and as a conclusion of the negotiation, the defendant, Smallwood, paid to the plaintiff in money $269.85, and delivered to him the notes of Mrs Brown held by the bank at that time, amounting to $230.15, which, added to the $269.85, makes the amount of $500. The defendant claims that at the time he purchased the stock of the plaintiff for the said sum of $500 it was upon the condition that the plaintiff was to have the right to repurchase the same at any time within 60 days thereafter upon repaying to the defendant the said sum of $500, with interest and some items of commission. The plaintiff claims that was not the bargain or effect of the transaction, but that he simply pledged the stock to the defendant as security for the payment of the $500. The plaintiff or his wife did not repurchase or offer to repurchase the stock within the 60 days, and thereupon the defendant procured the stock to be transferred to his name upon the stockbook of the bank. Thereafter the plaintiff's wife demanded the stock from the defendant and from the

bank, offering to pay to him or it, one or both, the amount of her indebtedness, namely, $230.15. The defendant refused to accede to the demand, not on the ground that the amount which she offered to pay was not the full amount due and owing by herself and husband, but upon the ground that the defendant was then the absolute owner of the stock because of the transaction which he had with her husband, and because the time in which the plaintiff had the right to repurchase the stock had expired. Thereupon Mrs. Brown commenced an action in the Supreme Court to recover from the defendant and the bank the 10 shares of stock, and upon the trial she, through her attorney, offered in open court that the stock should be charged with the total sum obtained thereon, to wit, the sum of $500, and interest. After hearing all the proofs and allegations of the parties in that action, the learned justice determined that the stock was pledged, and not sold, by the transaction of September 3d, and judgment was rendered, in effect that the stock belonged to Mrs. Brown, subject to a charge of $500 and interest; and it directed that upon payment of such sum to the defendant the stock should be transferred and delivered to plaintiff's wife; or that, upon her failure to pay such $500, the stock be sold, and any balance remaining after paying such sum to the defendant should be paid over to the plaintiff's wife. No appeal was taken from such judgment, and the plaintiff in that action paid the sum of $500, with interest, to the defendant, pursuant to the direction of such judgment, and the stock was transferred to the plaintiff's wife.

It will thus be seen that by such judgment it was determined that the plaintiff's contention in respect to the transaction of September 3d with the defendant, Smallwood, and the effect thereof, was correct, to wit, that the stock was pledged as security for the payment of $500, and was not sold to the defendant, Smallwood, or the bank, as claimed by the defendant, either absolutely or conditionally. That being the transaction, it is apparent that neither the defendant nor the bank were in any manner injured by the concededly false statement contained in the affidavit made by the plaintiff above referred to, in which he stated that he had authority to pledge the stock for his wife's indebtedness and the amount of money which he received in addition thereto, and such right or authority has never been questioned either by the plaintiff or his wife; but he had no authority to sell the stock, and he so testified in the equity action. In other words, as found by the judgment, the transaction was a pledge of the stock, and concededly the plaintiff had a right to make such pledge; therefore no damage resulted to the defendant or the bank by reason of the false statement contained in plaintiff's affidavit, because they received exactly what they bargained for, to wit, the stock as a pledge to secure the payment of the money loaned to the plaintiff and his wife.

After the rendition of the judgment in the action brought by plaintiff's wife, and on the 10th day of March, 1900, the grand jury of Genesee county presented an indictment against the plaintiff in this action for the crime of grand larceny, the specific charge being that the plaintiff obtained the $269.85 from the defendant by means of false and fraudulent representations, to wit, by means of the statement

contained in the affidavit to which we have called attention. There-after, and on the 21st day of May, 1900, the indictment was dismissed—on what particular ground does not appear—and the prosecution was finally ended. The plaintiff was arrested upon the indictment, was required to give bail, which he subsequently did, and incurred some expense in procuring the indictment to be dismissed.

It is claimed by the plaintiff that the defendant maliciously, and without probable cause, procured the indictment to be found by the grand jury against the plaintiff, because, when called as a witness before that body, he gave testimony which he knew to be false, for the purpose of causing such indictment to be found; and that when he gave the same he had no reasonable or probable cause to believe that it was true, but, on the contrary, knew that it was false. Without going over in detail the testimony given by the defendant before the grand jury, and which it is claimed was knowingly false, and which was the only evidence which justified the finding of the indictment, it may be said that it related to the version of the transaction between the plaintiff and the defendant on September 3d, the defendant testifying before the grand jury that the transaction was a sale of the stock to him by the plaintiff, and not a pledge of the same, and that he relied upon the statement contained in the affidavit that the plaintiff had the right to sell such stock, and advanced the money to him upon the faith of such statement. Whether or not the testimony so given by the defendant was knowingly false and untrue, whether it was given maliciously, and for the purpose of procuring an indictment to be found against the plaintiff, and whether it in fact had such effect, and whether or not defendant had probable cause for making such statements, were all questions of fact to be determined by a jury. After a full, clear, and explicit charge by the learned trial justice, the jury determined all those questions of fact favorably to the plaintiff, and we think the evidence is of such a character that this court would not be justified in setting aside the verdict because against the weight of the evidence, and therefore the judgment entered thereon should stand, unless error was committed in the reception of evidence which was prejudicial to the defendant.

The plaintiff was permitted, over defendant's objection, to put in evidence certain newspaper articles, which purported to give the facts of the plaintiff's indictment, his arrest and admission to bail, and, in addition, plaintiff's version of the transaction, with considerable detail, which, if true, exonerated the plaintiff from all blame, and clearly indicated that the defendant had caused the indictment to be found without probable cause, and maliciously. We think the reception of such evidence constituted error, and was prejudicial to the defendant. It enabled the plaintiff to get his version of the transaction before the jury without subjecting himself to the test of cross-examination. If the articles had merely stated the fact that the plaintiff had been indicted, stating the charge, had been arrested, had given bail, undoubtedly such articles would be competent as showing the publicity given to the alleged wrong done him by the defendant; but when, in addition, the articles purport to state facts bearing upon the merits of the controversy, and especially when, in terms, they

purport to give the plaintiff's version of the transaction, we think it clear that they are not competent, and should not have been received in evidence, and that their reception was prejudicial to the defendant.

The plaintiff was also permitted, over defendant's objection, to make proof as to the wealth of the defendant, or the amount of property which he owned. We think the admission of that evidence also constituted reversible error. The case of Palmer v. Haskins, 28 Barb. 90, was an action for slander, and the plaintiff was permitted to introduce evidence, under objection, tending to prove the pecuniary circumstances of the defendant. It was held to constitute reversible error. It was conceded in that case that, if the jury found in favor of the plaintiff, it was entitled to award exemplary damages against the defendant, yet it was held that it was error to admit evidence tending to show the financial responsibility of the defendant. The case of Austin v. Bacon, 49 Hun, 386, 3 N. Y. Supp. 587 (decided by the General Term of this department), was an action for slander, and evidence was introduced, over defendant's objection, tending to show what the income or profits from defendant's business has been during one year. The reception of such evidence was held to constitute reversible error. Judge Martin, in writing the opinion of the court, said:

"In the case of Palmer v. Haskins, 28 Barb. 90, it was held that in an action of slander or libel the pecuniary circumstances of the defendant are not involved in the issue, and evidence showing him rich or poor ought not to be received. We have been unable to find that this case has ever been criticised or overruled, although the decision was made more than thirty years since. Under those circumstances we regard it our duty to follow the doctrine of that case."

The same doctrine was reiterated in Enos v. Enos, 58 Hun, 45, 11 N. Y. Supp. 415, which was also an action for slander, and the Palmer and Austin Cases were cited with approval. The measure of damages in those cases is precisely the same as in the case at bar, and therefore the authorities cited must be regarded as decisive of the proposition that it was error to admit evidence tending to show the financial circumstances or responsibility of the defendant, and we cannot say that the reception of such incompetent evidence was not prejudicial to the defendant. It follows that the judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide event.

Judgment and order reversed, and new trial ordered, with costs to the appellant to abide the event, upon questions of law only, the facts having been examined, and no error found therein. All concur.