JERRY LINEHAN, Appellant, *v.* FRANK J. NELSON, Respondent.

Slander — witness cannot state what effect the slanderous statement had, in his mind, upon the reputation of the plaintiff — question of fact — erroneous charge.

In an action for slander, it is erroneous to permit a witness, who heard the alleged slanderous remarks, to state what effect such remarks had, in his mind, upon the reputation or good name of the plaintiff. Such testimony is simply the statement of a belief, a mere mental operation of the witness, and is inadmissible as evidence, either upon the merits or in mitigation of damages.

It appears that plaintiff had been a party in a suit before a justice of the peace. The next morning defendant, who had been the attorney for the other party in that suit, met the plaintiff at the office of the justice, and, according to the plaintiff and his witnesses, accused him of having committed perjury in the suit. The defendant and his witnesses testified that the defendant said to the plaintiff, in substance, only, that "I wouldn't have sworn to a lie or damned lie for all that was involved," or "all in the case." The trial court, at the request of the defendant, instructed the jury that, if they found that the defendant used only those words, quoting them, it was not slander and that they should find for the defendant. *Held*, error. Had the words been spoken generally and without reference to the suit in which the plaintiff had testified, the trial court would have been justified in stating as matter of law that the naked words, unrelated to any occasion on which perjury was possible, would not be slanderous *per se*. But, under the circumstances, it was a question of fact whether the language used by the defendant referred to the testimony of the plaintiff upon the trial before the justice, and, if it did, whether those who heard it understood it as charging the plaintiff with having committed perjury.

*Linehan* v. *Nelson*, 130 App. Div. 905, reversed.

(Argued January 28, 1910; decided February 15, 1910.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered February 10, 1909, affirming a judgment in favor of defendant entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Floyd E. Whitman* and *Acton M. Hill* for appellant. The court erred in permitting witnesses to testify that the statements made by the defendant Nelson at the time of the slander did not injure Linehan's reputation in their estimation, and that they did not think much about it afterwards. (*Titus* v. *Sumner*, 44 N. Y. 266; *Herrick* v. *Lapham*, 10 Johns. 281.) The court erred in stating to the jury in substance that if the words as charged were not proven to have been uttered by the defendant, the verdict must be for the defendant. (*Sherwood* v. *Chase*, 11 Wend. 38; *McClanghy* v. *Wetmore* 6 Johns. 82; *Hutchins* v. *Blood*, 25 Wend. 411; *Schoonover* v. *Beach*, 23 Wkly. Dig. 348; *Fox* v. *Vanderbeck*, 5 Cow, 513; *Miller* v. *Miller*, 8 Johns. 74.)

*Monroe Wheeler* and *Frank J. Nelson* for respondent. The court did not err in stating to the jury in substance that if the words as charged were not proven to have been uttered by the defendant, the verdict must be for the defendant. (*People* v. *Dimmick*, 107 N. Y. 26; *Caldwell* v. *N. J. S. Co.*, 47 N. Y. 282.)

WERNER, J.   This case belongs to a class in which the number of interesting and perplexing questions of law are not infrequently in inverse ratio to the importance of the subject-matter. The action is for slander. At Trial Term the defendant had a verdict, and the judgment entered upon it was affirmed at the Appellate Division by a divided court. The substance of the allegations of the complaint is that the defendant falsely and maliciously accused the plaintiff with having committed perjury. At the trial the plaintiff pre-

sented evidence tending to show that in an action tried before a justice of the peace and a jury, wherein one Mead was plaintiff, and Linehan, the plaintiff in the case at bar, was the defendant, evidence had been given by the parties, *pro* and *con*, upon the question whether Linehan had exacted usurious interest in a loan which he had made to Mead. That action resulted in the defeat of Mead. On the morning following the verdict this defendant, who had acted as counsel for Mead, went to the office of the justice for the purpose of paying the costs. At that time and place the plaintiff and the defendant in this action met and a conversation ensued in the course of which, according to the plaintiff and his witnesses, the defendant directly accused the plaintiff of having committed perjury in the suit before the justice. Several witnesses corroborated the plaintiff. The defendant and a number of other witnesses gave a different version of the affair and stated, in substance, that the defendant said to the plaintiff, " I wouldn't have sworn to a lie for all that was involved," or " I wouldn't have done what you did for the whole amount that was involved, swear to a damned lie." With immaterial variations several witnesses for the defendant testified to this statement. The record presents the controversy with all the detail that is usual in such cases, but this brief outline of the issue is a sufficient introduction to the only two questions which we deem it necessary to discuss.

One of the witnesses for the plaintiff was asked upon cross-examination whether the accusation made by the defendant against the plaintiff had injured the reputation of the plaintiff in the estimation of the witness. Upon the direct examination of several witnesses for the defendant they were asked similar questions. These questions were not all couched in the same language, but they were substantially identical and one may be selected as fairly typical of the rest. " Did the remarks that Nelson made, those which you have related, affect the reputation of Linehan in your mind at all ? " Each of these questions was objected to as incompetent, improper and inadmissible. The objections were overruled, the plain-

tiff's counsel excepted, and in each instance the witness answered in substance, "It did not affect his reputation or good name in my mind."

The question is thus flatly presented whether a defendant in an action for slander may introduce in evidence the impressions of witnesses to the slander as to its effect upon the plaintiff. Singular as it may seem, this question does not appear ever to have directly arisen in any case argued before this court, and the few decisions upon it in other jurisdictions are so scattered and meagrely reported that we feel at liberty to consider it upon reason untrammeled by authority. There can be, of course, only two theories, upon which the admissibility of such testimony can be advocated. One is that it goes to the defense upon the merits and the other is that it may be considered in mitigation of damages. We think neither is practical. In all cases of this class the ultimate question is the extent of the pecuniary injury caused by the wrong. If witnesses are to be permitted to testify to their mental impressions as to the effect of a slander, it will introduce into this kind of litigation a new element of speculation and uncertainty. One witness may not believe the accusation of A against B because the reputation of B is so high as to preclude any belief of its truth; another witness may disbelieve it because he has no confidence in the truthfulness of A. In either event, it is simply the statement of a belief; a mere mental operation of the witness. Upon this shadowy kind of testimony a defendant could justify or mitigate a slander in one case because nobody would believe him, and in another case because the reputation of the person assailed is so high as to render him immune from harm. Under such a rule a person of lofty character might be slandered with impunity, upon the theory that it could not hurt him because the defamatory charges would not be believed; or a slanderer might escape the consequences of his wrong by proving his own mendacity. It would be unwise, to say the least, at this late day to engraft upon the law relating to slander a rule of evidence so clearly opposed to the expeditious

and practical disposition of trials. There are also other controlling reasons of convenience which forbid resort to such evidence. If one or more witnesses to a slander may be called to testify to their belief that it had no injurious effect, other witnesses may of course be called to express a contrary opinion. We do not see why the same rule would not obtain in actions for libel. All the readers of a libelous article could, therefore, be called upon to testify to their impressions, *pro* and *con*, as to its effect upon the person libeled. It would follow that the reasons for their beliefs would logically be the proper subject of cross-examination. This would multiply collateral issues and render trials interminable. The result of such procedure can be more easily imagined than described. Without extending the discussion upon this feature of the case, we conclude that the evidence was improperly received.

There is another aspect of this case in which we think error prejudicial to the plaintiff was committed by the learned trial court. The slander charged in the complaint and supported by the evidence for the plaintiff was that he had been guilty of perjury. As to that the trial court correctly charged the jury that it was slanderous *per se* because it imputed to the plaintiff the commission of a felony. (*Hopkins* v. *Beedle*, 1 Caines, 347.) As we have already indicated, however, the defendant and his witnesses gave a different version of the matter. They testified that the defendant did not in express words charge the plaintiff with having committed perjury, but that defendant in addressing the plaintiff merely said, "I wouldn't have done what you did for the whole amount that was involved, swear to a damned lie."

As bearing upon that feature of the evidence the learned trial court in the body of the charge instructed the jury that if the defendant did not use the words as claimed by the plaintiff and did not charge the plaintiff with having committed perjury, the verdict would have to be for the defendant. That passage in the charge does not seem to have been excepted to by the plaintiff's counsel, but later, upon the request of defendant's counsel, the court charged, "that if

the jury find that the defendant said in substance only that ' I wouldn't have sworn to a lie or damned lie for all that was involved,' or ' all in the case,' it was not slander and the jury should find for the defendant." That instruction was specifically excepted to and we think it presents an error which is fatal to the judgment. The question whether the words admitted by the defendant and his witnesses to have been used, amounted to a charge of perjury, depends entirely upon the conditions and circumstances in which they were uttered. Had they been spoken generally and without reference to the suit in Justice's Court in which the plaintiff had testified, the learned trial court would have been justified in stating as matter of law that the naked words, unrelated to any occasion on which perjury was possible, would not be slanderous *per se.* (*Hopkins* v. *Beedle,* 1 Caines, 347 ; *Vaughn* v. *Havens,* 8 Johns. 109 ; *Bullock* v. *Koon,* 9 Cow. 30.) But they were in fact spoken in the office of the justice of the peace, on the morning after Linehan had testified upon the issue of alleged usury, and it was, to say the least, a question of fact to be submitted to the jury whether the language used by the defendant referred to the testimony upon that trial, and if it did, whether those who heard it understood it as charging the plaintiff with having committed perjury. Upon that branch of the case the question of law for the court to decide was whether the words, in the connection in which they were used, might have been understood as imputing to the plaintiff the crime of perjury. As the evidence required that question to be answered in the affirmative, it was for the jury to determine as a question of fact whether those who heard the words did so understand them. (*Hayes* v. *Ball,* 72 N. Y. 418 ; *Warner* v. *Southall,* 165 N. Y. 496.)

The judgment of the Appellate Division should be reversed and a new trial ordered, with costs to abide the event.

CULLEN, Ch. J., GRAY and WILLARD BARTLETT, JJ., concur ; HAIGHT, HISCOCK and CHASE, JJ., concur on second ground stated in opinion.

Judgment reversed, etc.