**WALRUS MANUFACTURING COM-
PANY, Plaintiff,**

v.

**The EXCEL METAL CABINET COM-
PANY, Inc., Defendant.**

Civ. A. No. 6409.

United States District Court
W. D. New York.

April 16, 1957.

Penney, Penney & Buerger, Buffalo, N. Y., for plaintiff.

Myles, Wormser & Koch, Buffalo, N. Y. (R. Norman Kirchgraber, Buffalo, N. Y., of counsel), for defendant.

MORGAN, District Judge.

This is an action for libel. It is brought concerning a letter written by one E. A. Malnati, Jr., an employee of the Excel Hospital Equipment Company, exclusive sales agents for defendant.

At the time of the writing of the letter in suit, Malnati, then 26 years of age, was employed as a clerk in the Purchasing Department and an assistant in the

Sales Department of the Excel Hospital Equipment Company. He was at no time an employee of defendant. However, his letter was written on the stationery of defendant, to which he had free access, and was signed by Malnati on behalf of defendant.

The letter in suit, dated April 12, 1954, insofar as pertinent, reads as follows:

"Needless to say, we were very sorry, and a little surprised, to learn that the contract for both the hospital and laboratory casework was awarded to the Walrus Mfg. Company for the amount of $119,000 which was about $30,000 lower than the lowest combined price received in competitive bidding.

"We are certain that no manufacturer, regardless of the quality of the unit he intends to furnish, can manufacture, ship and erect a job of this size for this contract price. As you can no doubt appreciate, every qualified casework manufacturer is faced with approximately the same basic material, labor and production costs which vary only slightly in regard to manufacturing procedure and factory location.

"You are no doubt aware that the Walrus Mfg. Company has only recently entered the metal casework business.

"We sincerely believe that any initial savings made by purchasing a job of this quality will only be dissipated by the aggravation, loss of time, general dissatisfaction and high maintenance costs which will be incurred during the course of the project and the life of the hospital.

"We trust that our comments in regard to this work will not be misconstrued, as our only purpose is our desire to point out the recognized differences between quality hospital casework and a product which may not prove satisfactory under the heavy service which is inflicted upon it in hospital usage."

This letter was composed in long-hand by Malnati, who then gave it to a stenographer at the New York City offices of his employer. After being typed, no other employee of defendant corporation read or otherwise ratified it. A copy of the letter was sent to the Architect in charge of the project concerning which plaintiff had received the contract referred to in Malnati's letter. Another copy was sent to the Director of the Physical Plant at the University of Tennessee, where the project was located. The last named person sent a copy of this letter to the firm of general contractors in charge of the project, where it was read by a partner in the firm and by the project manager.

Plaintiff here seeks damages, both compensatory and punitive. It is true that Chief Judge Burke of this District denied defendant's motion to dismiss the complaint by his order dated June 10, 1955. That does not constitute a substantive decision respecting the libelous character of the letter after trial.

■■■ As to the questions of admissibility of certain evidence raised on trial, we make the following conclusions of law:

(a) Testimony, the purpose of which is to prove mitigating circumstances, lack of malice or mitigation of damage is admissible. Civil Practice Act, Section 388; Abell v. Cornwall Industrial Corporation, 241 N.Y. 327, 150 N.E. 132, 43 A.L.R. 880; Fleckenstein v. Friedman, 266 N.Y. 19, 193 N.E. 537.

(b) Testimony that plaintiff's reputation and standing in community were not affected by a publication actionable per se is inadmissible. Linehan v. Nelson, 197 N.Y. 482, 90 N.E. 1114, 35 L.R.A., N.S., 1119.

(c) Testimony of third persons as to their understanding of the letter is inadmissible. Bishop v. New York Times Co., 233 N.Y. 446, 450, 135 N.E. 845.

(d) Testimony regarding defendant's financial status and ability is not admissible in New York. Enos v. Enos, 58 Hun 45, 11 N.Y.S. 415; Wilson v. Onondaga Radio Broadcasting Co., 175 Misc. 389, 23 N.Y.S.2d 654; Brown v. Smallwood, 86 App.Div. 76, 83 N.Y.S. 415.

■■■ The law is well settled in New York that a corporation may be liable for

torts committed by its officers as agents acting within the actual or implied scope of their employment, or in furtherance of the corporate business, or if in excess of their authority, when such acts have been ratified by the corporation. Gomez v. Loumat Realty Corp., Sup., 78 N.Y.S.2d 772; O'Brien v. B. L. M. Bates Corp., 211 App.Div. 743, 208 N.Y.S. 110; Kharas v. Baron C. Collier, Inc., 171 App.Div. 388, 157 N.Y.S. 410. We believe that the evidence here justifies the conclusion that Malnati was acting within the implied scope of his employment as defendant's agent, and in furtherance of defendant's corporate business. The position of Malnati's employer as exclusive sales agent for defendant, and the use, apparently customary, of defendant's letterhead, coupled with Malnati's signature on behalf of defendant, fortify this conclusion.

■ Defendant contends that Malnati's letter was privileged, under the rule of Ashcroft v. Hammond, 197 N.Y. 488, 90 N.E. 1117, in that it was a communication concerning matters in which both the writer and recipients had a mutual interest. We do not find that the kind of common interest required under Ashcroft and the cases which have followed it, is present here. The only matter of common interest presented in the entire communication was a sub-contract on a project which had previously been let on bid. There is no reason to assume, on the basis of the evidence, that the position of either party could be altered in any way with respect to the common interests embodied in this letter, as a result of this letter. Such a letter cannot be considered a privileged communication. See Shenkman v. O'Malley, 2 A.D.2d 567 at page 577, 157 N.Y.S.2d 290, at page 300.

■ We find further that, on the basis of the credible evidence, there is no justification in the present case.

■ As to the question of damages, we must determine first of all the extent of publication. Under the ruling in Ostrowe v. Lee, 256 N.Y. 36, 175 N.E. 505 and Bradley v. Conners, 169 Misc. 442, 7 N.Y.S.2d 294, we hold that Malnati's delivery of the handwritten letter to a corporate stenographer in New York City resulted in a publication in New York. Though the law of New York is unsettled on this point, we adopt the ruling in the above cited cases for reasons set forth in the dissent of Rives, J., in Mims v. Metropolitan Life Ins. Co., 5 Cir., 200 F.2d 800, at pages 803, 804. There was a further direct publication in the State of Tennessee to two persons, and as a natural result of this, a further publication to at least two other persons. All of the persons to whom the letter was published in Tennessee were persons of some standing or authority in the construction industry, the source of plaintiff's business.

■ Damages recoverable for a defamation consist of two items: (1) compensatory (or actual) damages, of which a major component is the damage to plaintiff's reputation resulting from the libel and (2) punitive (or exemplary) damages, recoverable only if the publication is shown to have been made with "actual malice"—a term taken to include "a libel, recklessly or carelessly published, as well as one induced by personal ill will." Crane v. New York World Telegram Corp., 308 N.Y. 470, at page 476, 126 N.E.2d 753, at page 757, 52 A.L.R.2d 1169. It is well settled that the amount of plaintiff's recovery may be reduced by proof of facts "tending but failing to prove the truth" of the libelous charge. Crane, supra.

■ However, damages are presumed to flow from a libel (Abell v. Cornwall, supra) and a plaintiff need not offer proof of any damage but is entitled to recover for the injury to his reputation * * * (Bishop v. New York Times Co., supra). In a libel case, more perhaps, than in any other, the jury is generally considered to be the supreme arbiter on the question of damages. In actions for other torts, there is generally to be found some standard by which the

**844**

reasonableness of an award of damages may be tested, but it is seldom so in action for libel and slander where the elements of wounded sensibilities and loss of public esteem play a part. Lynch v. New York Times Co., 171 App.Div. 399, 401, 157 N.Y.S. 392; Frechette v. Special Magazines, 285 App.Div. 174, 178, 136 N.Y.S.2d 448; Reynolds v. Pegler, 2 Cir., 223 F.2d 429. The right, as a matter of law, to compensatory damages, however, does not imply a right to substantial damages. Substantial compensatory damages must be founded upon a finding of substantial injury * * *. (Abell v. Cornwall, supra). It is necessary to plead and prove special damage arising from injury to a plaintiff's business as a result of publication of words however falsely or maliciously spoken or written if they were not defamatory upon their face, but require extrinsic evidence showing them to have been defamatory. Frawley Chemical Corp. v. A. P. Larson Co., 274 App.Div. 643, 86 N.Y.S. 2d 710. However, where words are libelous upon their face, general damages are inferred by law and need not be proved by evidence. Frechette v. Special Magazines, supra; New York Woman v. New York Evening Journal, 172 Misc. 303, 14 N.Y.S.2d 916; Rosner v. Globe Value Corp., 193 Misc. 351, 83 N.Y.S.2d 496, affirmed 275 App.Div. 703, 87 N.Y.S.2d 524; Julian v. American Business Consultants, Sup., 131 N.Y.S.2d 374, affirmed 285 App.Div. 944, 139 N.Y.S.2d 903; Stevenson v. Hearst Consol. Publications, 2 Cir., 214 F.2d 902; Bank v. Bowdre, 92 Tenn. 723, 23 S.W. 131. We hold that the letter here concerned was libelous upon its face, and thus as a matter of law, plaintiff has a right to general damages. However, we do not feel that plaintiff has suffered substantial damage, nor did defendant offer, as was its right, anything substantially mitigating the libelous character of the letter. We therefore find general damages for plaintiff in the amount of $1,000. We find no basis for punitive damages in this case.

Judgment may be entered.