E. LEONARD CHEATUM, Respondent-Appellant, *v.* LOUIS A. WEHLE, Appellant-Respondent.

Third Department, March 27, 1958.

*Joseph Rosch, Nathan M. Medwin* and *John W. Tabner* for respondent-appellant.

*George R. Fearon* and *Vincent A. O'Neil* for appellant-respondent.

FOSTER, P. J. Appeal from an order of the Supreme Court which held that a complaint in a slander action states a good cause of action, and struck out certain affirmative defenses set forth in the answer.

The complaint alleges that at the times mentioned plaintiff was the Chief of the Bureau of Game in the Fish and Game Division of the Conservation Department of the State of New York, and that defendant was the Conservation Commissioner. Further, that at a dinner held in a hotel at Watertown, New York, attended by sportsmen and writers, the defendant made a speech in which he stated the following concerning plaintiff.

" At Albany I found a secret society or fraternity among the employees. They stood around in groups in the corridors, whispering among themselves and looking at me out of the corner of their eyes. They were out to oppose anything I favored.

" My Grenadier Island project for toughening pheasants under semi-wild conditions was torpedoed by that bunch.

"Twenty thousand birds were put on the island. All but five thousand died of botulism, a food poisoning. The reason they died was because the head of my game bureau, E. L. Cheatum, sent some five thousand birds there from the Delmar Game Farm. These birds were half dead from botulism when they were shipped. It was like taking kids with measles and putting them in a room with healthy kids. The rest contracted the disease as anyone might expect they would.

" Cheatum was advised against sending these birds but he paid no heed. It was either deliberate sabotage or gross neglect on his part. It sunk the experiment. The State could well do without the services of such employees. What the Department needs is a good overhauling and that is what I plan to do right away — starting with Cheatum.''

The complaint also alleges that such statements were false and were made maliciously. The answer denies that defendant uttered the alleged defamatory remarks, and sets up two alleged complete defenses and three partial defenses. The complete defenses come under the head of fair comment and absolute privilege. In connection with the defense of privilege defendant asserts that the complaint does not state facts sufficient to constitute a cause of action, which of course would be true if an absolute privilege existed. Whether such privilege existed is a question of law under the circumstances (*Ashcroft* v. *Hammond*, 197 N. Y. 488; Restatement, Torts, § 619).

The Special Term held the complaint sufficient and dismissed the second defense designated as '' III '' in the answer. Defendant argues this was error under the common-law rule which extends to executive officers of the Federal and State Governments the same absolute immunity enjoyed by legislators

and judges for defamatory statements made during the course of their official duties. This doctrine has been recognized in this State (*Hemmens* v. *Nelson,* 138 N. Y. 517, 523), but the question involved is in its application. The immunity granted to legislators does not extend to speeches they make to their constituents outside of legislative chambers, nor do judges have such immunity unless they are engaged in the performance of a judicial function (1 Harper & James on Law of Torts, § 5.22, pp. 422, 428; *Murray* v. *Brancato,* 290 N. Y. 52). The speech made by defendant to a group of citizens, sportsmen or not, was not connected in any way with his duty to administer the Department of Conservation. It stood on no different plane than a legislator's speech to his constituents explaining his vote, or berating some of his colleagues. The Federal cases cited by appellant have no relevancy to the situation alleged here, as we view it. Nor are we able to see a qualified privilege under the second defense. No legal or moral duty was fulfilled by the defendant in advising private citizens that plaintiff was guilty of negligence or deliberate sabotage, because the audience could do nothing about it in any event, and hence there was no qualified privilege (*Bingham* v. *Gaynor,* 203 N. Y. 27).

The second defense of privilege was properly stricken out and complaint held sufficient.

The first defense (designated in the answer as " II ") of fair comment is equally subject to criticism. Because plaintiff occupied a public office his activities were the subject of fair comment (*Toomey* v. *Farley,* 2 N Y 2d 71). But the principle of fair comment affords legal immunity only for an honest expression of opinion on matters of legitimate public interest when based on a true or privileged statement of facts (1 Harper & James on Law of Torts, § 5.28, p. 456 *et seq.*). The defense of fair comment implies the utterance of a derogatory opinion, not a statement of fact. Comment is the equivalent of opinion or belief (*Julian* v. *American Business Consultants,* 2 N Y 2d 1, 8). It may be noted from the portion of the speech quoted that it is a mixture of fact and opinion. The opinion part could only be justified as fair comment under the first defense if the allegations of the defense tend to prove the truth of facts as charged. As we read the allegations of this defense they do not tend to prove the truth of the charges as made; and in fact the defendant denies that he used the language quoted in the complaint, but he does not say what language he did use. Thus, since the defendant has not pleaded what he claims is the true version of his speech, and has not pleaded the truth of the state-

ment that plaintiff was guilty of "deliberate sabotage or gross neglect" the first defense is insufficient as a complete justification by way of fair comment. Unless the facts are true or privileged the defense of fair comment is not applicable (1 Harper & James on Law of Torts, § 5.8, p. 371; *Toomey* v. *Farley*, 2 N Y 2d 71, *supra*). However, although the first defense is not sufficient as a complete defense we think it may be properly retained as a partial defense (Civ. Prac. Act, 338; *Crane* v. *New York World Tel.*, 308 N. Y. 470, 477). The Civil Practice Act gives a defendant in a slander action broad latitude to prove mitigating circumstances, including the sources of his information and the grounds for his belief, notwithstanding that he has pleaded or attempted to prove a justification.

The third defense (designated "IV" in the answer) reiterates the allegations of the first two so-called complete defenses as a partial defense. We do not regard the allegations of the second defense, i.e. privilege, as sufficient for a partial defense, since on the occasion in question defendant enjoyed no immunity from his office. The third defense should be stricken out since defendant is permitted to plead as partial defense the allegations of the first defense.

The fourth defense (designated "V" in the answer) deals with the use of the word "sabotage", and is explained as a retraction. Whether it may have some effect on the issue of punitive damages, assuming that issue is reached, will depend upon all the proof; and hence it should properly remain as a partial defense.

The last partial defense undertakes to state what defendant meant by the use of certain words, and denies the use of two adjectives, "deliberate" and "gross". The plaintiff has the burden of proving that the statements were reasonably understood by listeners in the sense that would make them defamatory (Restatement, Torts, § 613). It is immaterial what the defendant intended: the test is what his audience reasonably understood him to mean (Restatement, Torts, § 580; *Linehan* v. *Nelson*, 197 N. Y. 482). Moreover, since the defendant may prove under his general denial that he did not use the words which the complaint attributes to him, it is unnecessary for him to deny specific adjectives. The Special Term struck out this defense.

The order should be modified by permitting the first affirmative defense (designated "II" in the answer) to remain as a partial defense only, and by striking out the third affirmative defense (designated "IV" in the answer), and, as so modified, affirmed, with $10 costs.

BERGAN, COON and GIBSON, JJ., concur.

Order modified, on the law, by permitting the first affirmative defense (designated '' II '' in the answer) to remain as a partial defense only, and by striking out the third affirmative defense (designated '' IV '' in the answer) and, as so modified, affirmed, with $10 costs.