ARTHUR M. DAY, Respondent, v. CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, Appellant.*

First Department, November 3, 1933.

* Affd., 264 N. Y. ——.

*Hugh S. Williamson* of counsel [*Matthias Plum* and *Edward A. Craighill, Jr.*, with him on the brief; *Breed, Abbott & Morgan*, attorneys], for the appellant.

*Robert H. Elder* of counsel [*David Handler*, attorney], for the respondent.

GLENNON, J. This is an action for libel. Plaintiff in answer to an advertisement applied, on June 10, 1928, for a position as salesman with the defendant. At that time he was a major in the National Guard, and resided in the officers' quarters at the armory located at No. 29 West Kingsbridge road. During the World War he served overseas with the rank of captain in the United States Army. Apparently, he enjoyed an excellent reputation.

At the time plaintiff signed an application for a position Mr. Harold C. Cottrell gave him certain " papers and propaganda and selling plans." According to the record Mr. Cottrell testified: " I then gave Mr. Day the ' How and Why ' book and a sales presentation and a prospectus. I told him to take them home and study them   *   *   *   but it at all times was the property of the United States Chamber of Commerce, but he could have it as long as he was in our employ and at any time that he left our employ, he was to return it to us."

The so-called " How and Why " book is made up of a series of mimeographed sheets which contain, among other things, instructions to salesmen. A fair sample of the matter contained therein is found in defendant's Exhibit H. It is known as " Standard Sales Talk." It reads in part as follows: " Good morning, Mr. Smith — Jones is my name, from the Chamber of Commerce of the United States in Washington. We've got some tax matters and one or two other things that I have been sent here especially to take up with you. Now if we can go to some place where we will not be disturbed it will only take about five minutes.

" You no doubt are familiar with some of the activities of the U. S. Chamber of Commerce, Mr. Jones. This is the home of the Organization (showing pictures), just across from the White House at Lafayette Square. This building was paid for by the business men of the United States, so you will know I am not here for a donation or a membership."

The closing paragraph is: " This is your receipt in full, Mr. Smith. Please make out your check for $7.50 to the U. S. Chamber of Commerce. Not necessary to spell it all out nor to put Washington, D. C., on it."

Plaintiff took the book and papers to his residence to study them

and also to determine whether he would accept a position as salesman. He was not told when this material was to be returned to defendant. On June nineteenth Mr. Cottrell wrote plaintiff requesting him to call on Thursday, June twenty-first. Plaintiff called on two occasions, but Mr. Cottrell was not there. On July ninth plaintiff went to Cleveland, Ohio, and from there to Chicago, Ill. He returned to New York on July twenty-third. During his absence a letter bearing date July third was received at the armory, but was not forwarded. The letter in substance demanded the return of the material.

In his examination before trial plaintiff testified that he received the letter about July twelfth, but on the trial he corrected the date to July twenty-third. The defendant claimed that two letters were sent to plaintiff, one bearing date of June twenty-fourth and the other June twenty-sixth, demanding the return of the material. Plaintiff denied that he had received either of them.

On July twelfth the following letter was mailed by defendant:

" CHAMBER OF COMMERCE
OF THE
UNITED STATES OF AMERICA
WASHINGTON

" O. A. BROWN, Eastern Field Manager,
850 Graybar Building, New York City.

" *July* 12, 1928.

" Mr. H. L. INGERSOLL,
Assistant to President,
New York Central Lines,
466 Lexington Av., New York.

" Dear Sir: Mr. Arthur M. Day, whose address is 29 West Kingsbridge Road, New York City, called on us some time ago in reference to employment with us. At that time he gave your name as reference and it has been sent to our bonding company.

" We gave Mr. Day some material belonging to the U. S. Chamber of Commerce and have asked him several times to return this to us but he has failed to do so. We feel we have given him sufficient time but hesitate to turn his name over to the bonding company before notifying you.

" Very truly yours,
" H. C. COTTRELL,
" *New York Manager, Editorial Dept.*"

Similar letters were also sent to John C. Hegeman, 360 Madison avenue, New York city; William W. Lobb, Vice-President, Chelsea

Exchange Bank, Thirty-sixth street and Eighth avenue, New York city; and A. C. Kelly, 42 Broadway, New York city.

We believe that the letter is libelous *per se.* Seelman in a book recently published on the Law of Libel and Slander, defines libel in part as follows (p. 5): "Any written or printed article is libelous or actionable * * * if it tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induces an evil opinion of him in the minds of right thinking persons and to deprive him of their friendly intercourse in society."

The words employed in the communication represented that plaintiff was unlawfully withholding property which belonged to defendant. The names of the four gentlemen to whom the letter was addressed were given by the plaintiff as persons to whom the defendant might refer as to his character and honesty, when he applied for a position. Defendant admits in its answer that the statement in the letter to the effect that the names of the addressees given by plaintiff to defendant had been sent to defendant's bonding company, was untrue.

Since the matter contained in the letter of July twelfth was libelous *per se,* it was unnecessary for plaintiff to have pleaded the innuendo. The extrinsic facts should really have been treated as surplusage. The libelous communication itself was sufficient to entitle the plaintiff to general damages. The case should have been submitted to the jury upon the theory that the matter complained of was libelous *per se.* In *Morrison* v. *Smith* (177 N. Y. 366, at p. 368) Judge GRAY said: "At common law, that which implied reproach, scandal, or ridicule, to any person and reflected disgracefully upon his character whether written or printed, was a libel and was actionable without proof of special damage. The language used is to be understood by judge and jury in the same manner as others understand it, and words are to be taken in that sense, which would be naturally conveyed to persons of ordinary understanding. The principle upon which the rule of legal liability for damages rests is that no man possesses the right to lessen the comforts, or the enjoyment of another and that, when he does so deliberately, wantonly and maliciously, it is, *prima facie,* evidence of malice and he is bound to make compensation for the mischief occasioned. Therefore, if by printing, or writing, bad actions, or vicious principles, are imputed to a man and his respectability is diminished, his comfort and his enjoyment are lessened by the attendant disgrace, contempt, or ridicule, and damage will be presumed."

While the court below left the question of the libelous character of the words for the jury to determine, we believe nevertheless

that this defendant was not prejudiced thereby in any manner, since, we repeat, the communication was libelous *per se.*

We do not agree with the contention of appellant that the communications were privileged. Here there is no claim made that plaintiff was employed by defendant. In fact it is affirmatively alleged in defendant's answer that plaintiff never entered into defendant's employ, nor rendered any services whatever to defendant. In fact the first communication which any of the gentlemen whose names were given as references received was the libelous matter bearing date July twelfth. At the time the so-called property was turned over to plaintiff, no reliance was placed upon anything which any of these men had stated concerning the character or reliability and responsibility of plaintiff. Appellant in its claim of privilege relies on the case of *Ginsberg* v. *Union Surety & Guaranty Co.* (68 App. Div. 141). There, however, it appeared that the persons who received the letters from the Union Surety Company had made statements as to the character and integrity of the missing employee upon the faith of which the company had issued its bond. The court properly held that the communication was privileged. Here no such situation obtains.

The judgment should be affirmed, with costs.

MARTIN, O'MALLEY and TOWNLEY, JJ., concur; FINCH, P. J., dissents and votes for reversal and dismissal of the complaint.

FINCH, P. J. (dissenting). The judgment appealed from should be reversed and the complaint dismissed upon the ground the article complained of was substantially true, and hence not libelous. Upon the further ground also, that the publication was privileged.

Plaintiff sued for damages for an alleged libel claimed to have been contained in a letter reading as follows: " Mr. Arthur M. Day, whose address is 29 West Kingsbridge Road, New York City, called on us some time ago in reference to employment with us. At that time he gave your name as reference and it has been sent to our bonding company.

" We gave Mr. Day some material belonging to the U. S. Chamber of Commerce and have asked him several times to return this to us but he has failed to do so. We feel we have given him sufficient time but hesitate to turn his name over to the bonding company before notifying you."

The defendant sent the above letter to each of four gentlemen whose names plaintiff had given as references upon making application to the defendant for a position as salesman. Between June 8 and 13, 1928, defendant delivered to the plaintiff certain material for use in the sale of its product, with the understanding that it

represented considerable effort and expense, that plaintiff was to take particular care of this and return it if he did not enter defendant's employ or after entering left that employment. Plaintiff became interested in another proposition and laid aside the defendant's material. He did not communicate with the defendant again until July 23, 1928. In the meantime the defendant had sent the plaintiff four letters requesting the plaintiff to call or return the sales material belonging to the defendant, and also had attempted unsuccessfully to reach plaintiff by telephone. On July 12, 1928, the letter which is the basis of this action was sent. The defendant conceded that the statement in said letter that the names of plaintiff's references had been sent to the bonding company was untrue. All the other statements in said letter are in accordance with the facts, and hence, under well-settled principles of law, do not in themselves constitute a libel. (36 C. J. 1231, § 193; *Robinson* v. *Battle*, 148 App. Div. 230.) The question presented, therefore, is whether the inclusion of the aforesaid false statement converts the letter into a libel upon the plaintiff.

Said untrue statement was concerning an act alleged to have been performed by the defendant and not by the plaintiff. It in no wise affected the truth of the statements concerning the plaintiff. It, therefore, was an immaterial statement, and did not make libelous that which without it clearly was not libelous.

Secondly, the facts show that the communication was privileged. It was sent to the persons whom the plaintiff had given as references, in an endeavor to recover property intrusted to the plaintiff to the immediate return of which the defendant concededly was entitled. Defendant was privileged to call to the attention of those whom plaintiff had submitted as vouching for his integrity, the fact that plaintiff had failed to return said property in the face of numerous requests. Any possible imputation of dishonesty arising out of these facts was not created by the act of defendant, but instead, arose from the neglect of the plaintiff to comply with his agreement and cast upon him the burden of explaining such neglect to his references. Defendant was entitled to apply in good faith to the latter for aid in recovering defendant's property. There is no implication of malice from the facts, and no claim or proof of express malice on the part of defendant. Under such circumstances the communication was privileged. In *Ginsberg* v. *Union Surety & Guaranty Co.* (68 App. Div. 141) the plaintiff was a salesman who had been required by his employer to furnish a bond. He gave the bonding company the names of five references. The employer notified the bonding company that the salesman had failed to turn over money collected by him and had

made no response to requests to call. Thereupon the bonding company wrote the references a letter which contained the following statements: " We are now informed that Ginsberg has disappeared with certain cash collections and we are unable to locate him. In view of these conditions we will be greatly obliged if you will give us such information as you have or may be able to obtain which may aid us in locating the defaulter." The court held that the letter was a qualifiedly privileged communication and that no recovery could be had thereon in the absence of actual malice, saying, by McLaughlin, J. (at p. 143): "At the close of plaintiff's case the defendant moved to dismiss the complaint, substantially upon the ground that the letter was a privileged communication and the plaintiff had failed to show malice on the part of the defendant, in the absence of which he could not recover. The motion was denied and an exception taken. We are of the opinion that the motion should have been granted. * * * Under such circumstances, the law does not imply malice from the fact of the publication. Something further must be proved, and that is malice, either express or implied, which must be the incentive to the publication. * * * Here there was not only no proof of malice, but the proof was uncontradicted that the statements contained in the communication were true."

The judgment appealed from should be reversed, with costs, and the complaint dismissed, with costs to the appellant.

Judgment affirmed, with costs.