William E. Brennan, Jr., J.
Plaintiffs, engaged as copartners in the practice of law in Plainview, Long Island, seek damages for libel against defendant Pursley, the author of an article, and against the defendant Noeth, publisher of The Plainview Herald, a newspaper in which the article was published.
Each of the plaintiffs is a member in good standing of the New York Bar, each having been admitted to practice for approximately 10 years and each of apparently excellent professional reputation. Plaintiff McCaffrey is widely known in the county, having run for public office, and both plaintiffs are well known in the Plainview community, their firm having been retained in 1957 as the attorneys for Central School District No. 4, Town of Oyster Bay, which encompasses this area.
The article here complained of is no masterpiece of prose. It combines, in illogical sequence, an attack upon the school board’s policy of retaining attorneys on a fixed fee basis with a criticism of the conduct of the attorneys hired pursuant to that policy; and its lead and conclusion is that somehow this is costing the district one-half million dollars. How is this conclusion reached ? Is the thrust of the article to the effect that the policy of the board is resulting in this waste of taxpayers ’ funds, or that the conduct of the attorneys is responsible? The entire tone of the article leads inescapably to the conclusion that it is the conduct which is attacked. There is no suggestion that the attorneys have been paid too highly under the new policy. Nor is there any doubt that if the policy alone were being deplored there would have been no necessity of mentioning the attorneys themselves in any context. The attack is clear; ‘ ‘ the seeming inability of this firm to accept the sound advice of bonding counsel; * * * the attorneys read somewhere that the market might go lower and therefore advised the board not to sell. This was contrary to the advice given by our bonding counsel; * * * we should have retained the services of a more experienced firm * # *; Five-hundred thousand dollars is a high price to pay for the schooling of attorneys.” Thus, the plaintiffs have clearly been attacked in their professional capacity as lawyers.
Although the case was originally contested, the answer of the defendants was stricken for failure to appear for an examination before trial, and the order directing the case to be set down for inquest was also granted on default.
There is no plea or proof here of special damages, so there can be no recovery unless the publication is libelous per se. With respect to the activities of attorneys in their professional capac *56 ity, the rule was stated as far back as 1871 by the Court of Appeals in Sanderson v. Caldwell (45 N. Y. 398, 405): “ When the words spoken have such a relation to the profession or occupation of the plaintiff that they directly tend to injure him in respect to it, or to impair confidence in his character or ability, when, from the nature of the business, great confidence must necessarily be reposed, they are actionable ’ ’. (Italics supplied.) Here the attack was clearly directed at the ability of the plaintiffs in their professional capacity as attorneys and such as to injure them in that capacity. The article is therefore libelous per se (Kleeberg v. Sipser, 265 N. Y. 87), and the law imputes malice to the defendants and presumes that damages were sustained by the plaintiffs by the bare act of publication. (Krug v. Pitass, 162 N. Y. 154,160.)
The court is not unaware of the early cases which held that it is not slanderous per se to accuse an attorney with lack of skill in the handling of a specific lawsuit. (See Foot v. Brown, 8 Johns. 64.) It has been held, however, that a publication which charges an attorney with incapacity to perform the ordinary duties of his profession in a particular type or class of actions is libelous per se. (Mattice v. Wilcox, 147 N. Y. 624.) Here the plaintiffs are charged with inability, inexperience and general ineptitude to handle the affairs of a school board, and the attack reflected upon their general professional qualifications. (See, also, Kraushaar v. La Vin, 181 Misc. 508; Perry v. News Syndicate Co., 198 Misc. 976.)
It follows that the plaintiffs are entitled to compensatory damages commensurate with the injury (Day v. Chamber of Commerce of United States, 239 App. Div. 447, 450; Gressman v. Morning Journal Assn., 197 N. Y. 474, 480).
Compensatory damages in such a case are most difficult of evaluation. Upon the inquest, the plaintiffs established that they were each admitted to practice about 10 years ago and presently have offices in Plainview. Their flat fee retainer by the school board was originally $6,000 per year when they were first retained in August of 1957. They have continued as such counsel to the school board and their retainer today is $8,000 per year. They also established that there had been adverse comments made to them following publication of the article by individuals, neighbors and clients; and while the newspaper has a circulation limited largely to the Plainview area, it has been established that the greater portion of plaintiffs’ gross income from the practice of their profession is derived from clients who reside in that area.
*57 While an attorney’s character and reputation are his most precious possessions, an attack upon them cannot justify wild speculation in an attempt to place a monetary value on the wrong. An assessment must be made of the intensity of the attack, the likelihood of monetary loss as a result of the attack, the reputation of the attackers as to believability, and the ability of the injured parties to convince the public of the falsity of the charge. Here, although the libelous article was a definite affront to the professional capabilities of the plaintiffs, it was not characterized by the bitterness and brutality which frequently accompany defamatory utterances; nor is there any proof of actual monetary loss, or that people necessarily rely upon what they read in The Plainview Herald, a small weekly newspaper of limited circulation devoted largely to local news items, announcements and legal advertising. Weighing these factors, the court feels that an award of $3,000 to each of the plaintiffs will accomplish the vindication to which they are entitled and adequately compensate them for the wrong.
The plaintiffs also seek exemplary damages. Although the law presumes malice, an award of exemplary damages may not be made on the basis of the presumption. “It is well settled that punitive damages cannot be awarded by the jury in the absence of proof of express malice.” (Hollien v. Tarrytown Daily News, 235 App. Div. 869.) Malice may be determined to exist if it is established that there was personal ill will or that the words were of such a character as to impute a degree of wrongdoing calling for punishment or that the publication was made with such gross negligence and carelessness as to indicate a wanton disregard of the plaintiffs’ rights (Hollien v. Tarrytown Daily News, supra; Taylor v. Church, 8 N. Y. 452; Amory v. Vreeland, 125 App. Div. 850; Carpenter v. New York Evening Journal Pub. Co., 111 App. Div. 266).
The plaintiffs produced no evidence upon the basis of which the court can determine that either of the defendants was chargeable with actual malice. Accordingly, no award will be made for punitive damages. Compensatory damages are hereby assessed in the sum of $6,000, and the plaintiffs may enter judgment accordingly.