**UNITED STATES of America ex rel. Matthew MOTLEY**

**v.**

**Alfred T. RUNDLE, Superintendent, State Correctional Institution at Graterford and Arthur T. Prasse, Commissioner, State Correctional Institution at Graterford.**

**Civ. A. No. 41023.**

United States District Court, E. D. Pennsylvania.

March 29, 1972.

Stephen A. Sheller, Howard Davidson, Astor & Weiss, Philadelphia, Pa., for plaintiff.

Michael Luber, Asst. Atty. Gen., Dante Mattioni, Deputy Atty. Gen., Philadelphia, Pa., J. Shane Creamer, Atty. Gen., Harrisburg, Pa., for defendants.

## MEMORANDUM AND ORDER

JOSEPH S. LORD, III, Chief Judge.

This is a civil rights action under 42 U.S.C. § 1983. We have jurisdiction under 28 U.S.C. § 1343. Plaintiff, an inmate at Graterford State Correctional Institution, filed his complaint on Au-

gust 25, 1966, alleging that the defendants had violated his right to equal protection of the law under the Fourteenth Amendment. The defendants failed to answer the complaint, or file any response whatsoever, and on December 1, 1966 the court granted plaintiff's motion for a default judgment pursuant to F.R. Civ.P. 55.

The matter was brought to trial on the issue of damages on February 7, 1972.[1] Before trial, the defendants argued a motion to vacate the default judgment. Since the basis for the motion was an assertion of mistake, inadvertence or excusable neglect on the part of the defendants, it was denied as not being timely filed within one year after the judgment as required by F.R.Civ.P. 60(b). *See* Radack v. Norwegian America Line Agency, Inc., 318 F.2d 538 (C. A. 2, 1963).

Plaintiff alleged in his complaint that he was working in Graterford's weave shop at the rate of 69 cents ($.69) a day in May of 1966. At that time, by court order, he was transferred temporarily to the Eastern Correctional Institution in Philadelphia so that he might be held at a location closer to the Philadelphia courts, where he was scheduled for a hearing on a habeas corpus petition which he had pending there. When plaintiff was brought back to Graterford some unspecified time later, rather than being returned to the weave shop position he had held, he alleges that he was placed on the "run", which pays 15 cents ($.15) a day.

It is claimed that plaintiff has suffered the financial injury caused by his demotion because of racially discriminatory treatment by prison authorities. As a black inmate he was subject to one rule, which resulted in the loss of his position at 69 cents a day, while white inmates who were forced to leave the institution temporarily in similar circumstances maintained their jobs. Plaintiff refers in his complaint to one white inmate in particular who it is alleged was twice transferred to Eastern Correctional Institution in 1965, and each time upon his return to Graterford received his former job in the weave shop back at 69 cents a day.

By virtue of the default, the truth of these well-pleaded allegations is admitted. They may not be contested on the merits, and have the same effect as if established by proof. Thomson v. Wooster, 114 U.S. 104, 5 S.Ct. 788, 29 L.Ed. 105 (1885); Trans World Airlines, Inc. v. Hughes, 38 F.R.D. 499 (S. D.N.Y.1965). Thus, our starting point in assessing damages in this case is necessarily the assumption that the defendants did conduct a racially discriminatory policy of employment within the prison to the detriment of the plaintiff.

This Circuit has recognized three types of damages which may be recovered under appropriate circumstances for a violation of 42 U.S.C. § 1983. Besides actual compensatory damages, the successful plaintiff may recover nominal damages which flow from the deprivation of valuable constitutional rights, as well as punitive damages. Basista v. Weir, 340 F.2d 74 (C.A. 3, 1965); Washington v. Official Court Stenographer, 251 F.Supp. 945 (E.D.Pa.1966).

We make the following findings of fact based on plaintiff's testimony and his cumulative adjustment and work and quarters assignment record as compiled by Graterford personnel. Shortly after being returned to Graterford from Philadelphia, plaintiff on July 26, 1966 was transferred from his 69 cents a day job as a press operator in the prison's weave shop to a position as a cleaner in E–Block at 15 cents a day. The court rejects plaintiff's contention as speculation that had he remained employed in the weave shop, he would have been promoted after a period of some months to a much higher paying job in that shop as

---

1. The entry of a default judgment against a defendant is not considered an admission by the defendant of the amount of unliquidated damages claimed by the plaintiff. *See* F.R.Civ.P. 8(d); 6 Moore, Federal Practice ¶ 55.07 (1971 ed.).

a towel machine operator. Inmates with greater seniority than plaintiff in the weave shop were not promoted to this position, and his testimony was that his supervisor indicated only the possibility of such a promotion. Thus, plaintiff's compensatory damages for loss of wages must be computed as the difference between the 69 cents a day he was earning before he was taken temporarily to a Philadelphia prison and the 15 cents a day he earned after his demotion.[2]

Defendants contend that damages should run only until September 12, 1966 because prison records indicate that he was called for assignment to the weave shop on that date but turned it down. They argue that the notation in the record must mean that plaintiff was offered his old job at 69 cents a day and refused it. In light of the fact that this offer followed plaintiff's initiation of this action by just a few weeks, we accept his testimony that the offer was for a position as janitor in the weave shop at 20 cents a day. His refusal of the position is understandable since he felt that he should have been earning more than three times that amount if employed in the weave shop,[3] and he was not required to accept the job because it would have further mitigated damages some 5 cents each day.

The court further finds that had plaintiff retained his 69 cents a day job, as a "preferred" job within the prison, he would have lost it as of December 15, 1969, when he was put in punitive segregation for infractions of prison rules.[4]

Standard prison procedure governing at the time dictated that an inmate be punished by being demoted to a 15 cents a day job after such segregation.

■ Therefore, the plaintiff is entitled to compensatory damages for loss of wages for the period between July 26, 1966 and December 15, 1969, computed on the basis of the difference between 69 cents a day and 15 cents a day for a five-day work week. Since the evidence revealed that inmates only get paid for those days actually worked, the plaintiff may not recover for approximately five weeks of time during this period which his records reveal he spent in the hospital or court. Thus, plaintiff's recovery for loss of wages in this action will be $461.70.[5]

Compensatory damages may also include a reasonable sum in addition to the amount of lost wages, because of collateral deprivations suffered because of plaintiff's drastically reduced income. *See* Urbano v. McCorkle, 334 F.Supp. 161, 169 (D.N.J.1971). Plaintiff's uncontradicted testimony was that as a result of his losing his job in the weave shop he could not afford eyeglasses, dental plates and law books which he needed. He is entitled to a recovery for the delay caused in being able to obtain these items. Indeed, he may never have been able to obtain them.

■ Whether or not actual compensatory damage is present, a plaintiff in an action under 42 U.S.C. § 1983 may also recover nominal damages because

---

2. While plaintiff's 69 cents a day job was for five days a week, and his 15 cents a day position was seven days a week, the court considers only the money earned from five days of employment each week in the latter position as going towards mitigation of damages. Plaintiff should not be penalized by applying such "overtime" pay against losses sustained because of his greatly reduced pay over a five day week.

3. The notation referring to his refusal of the job in the weave shop indicates he complained of the noise and dust there.

4. The court rejects plaintiff's contention that his 1969 misbehavior was a result of his hurt feelings caused by the loss of his 69 cents a day press operator job in the weave shop in 1966.

5. This figure was arrived at through the following series of computations.

(a) $.69
   − .15
   ─────
   $.54

(b) $.54
   X  5 days
   ─────────
   $2.70 a week

(c) $ 2.70
   X   171 weeks (July 26, 1966 to December 15, 1969 minus 5 weeks)
   ─────────
   $461.70 total

the constitutional rights of a citizen are so valuable to him that an injury is presumed to flow from the deprivation itself. *See* Basista v. Weir, 340 F.2d 74 (C.A. 3, 1965); Wayne v. Venable, 260 F. 64, 66 (C.A. 8, 1919). In most cases when a public official denies rights that the citizen felt were secure under our Constitution, the result is hurt feelings, outrage, embarrassment or humiliation and nominal damages may be awarded for these natural consequences of lawless action by state officials. *See* Sexton v. Gibbs, 327 F.Supp. 134 (N.D.Tex. 1970), aff'd. 446 F.2d 904 (C.A. 5, 1971) (per curiam). Here, because of the existence of the default judgment, the court must consider plaintiff's right to equal protection under the law as provided in the Fourteenth Amendment to have been violated because of discriminatory treatment on account of his race. Plaintiff is thus entitled to nominal damages, as well as the compensatory damages for being unable to afford eyeglasses and other necessary items, and the court will award him $1,000.00.

Plaintiff has also requested punitive damages. However, at some point the realities of this being an award of damages based on a default judgment must be realized. On the one hand, plaintiff should not be penalized because he has won a judgment by default rather than by a trial on the merits. The court is not free to speculate on whether the claim really has merit, but should treat the default judgment as if there has been a decision on the merits. On the other hand, the court recognizes that punitive damages are to be awarded only in cases of malicious actions in gross disregard of a plaintiff's rights. Caperci v. Huntoon, 397 F.2d 799 (C.A. 1, 1968), cert. den. 393 U.S. 940, 89 S.Ct. 299, 21 L.Ed.2d 276 (1968); Urbano v. McCorkle, *supra*, 334 F.Supp. at 170; Sexton v. Gibbs, *supra*. There was no evidence at the damage hearing of any malicious or outrageous behavior on the part of the defendants. Plaintiff cannot simply rely on the default judgment with its necessary admission by the defendants of an equal protection violation for a claim of punitive damages. This is particularly so, since one function of punitive damages is its deterrent impact on the defendant to curb future violations. *See* Sostre v. McGinnis, 442 F.2d 178 (C.A. 2, 1971). Therefore, the plaintiff will not be awarded any punitive damages.

The court concludes that the plaintiff should receive an award of damages in the amount of $1,461.70.