John F. **MEEHAN** and Robert W. Fink d/b/a Meehan & Fink, Plaintiffs,

v.

John **SNOW** and Judy Snow, Defendants.

No. 75 Civ. 5891.

United States District Court, S. D. New York.

June 19, 1980.

McCann, Ahern & Sommers, P. C., Newburgh, N. Y., for plaintiffs.

Vogel, Marks & Rosenberg by Donald B. Rosenberg, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

LOWE, District Judge.

This is a diversity action for compensation for legal services rendered and for defamation. Defendants defaulted by failing to file a timely Answer to plaintiffs' Amended Complaint.[1] This action was thereafter referred to a Magistrate to determine damages under the second and third causes of action alleging defamation. By a Report dated November 1, 1979, United States Magistrate Harold J. Raby recommended that plaintiff John Meehan be

awarded $1 in compensatory damages and $50,000 in punitive damages. Defendants have filed objections to Magistrate Raby's recommendation, and accordingly, this Court must make a *de novo* determination of the issues considered by the Magistrate. 28 U.S.C.A. § 636(b)(1)(C) (Supp.1980). For the reasons more fully set forth below, the report of Magistrate Raby is adopted with the modifications indicated herein.

### Background Facts

Plaintiffs John F. Meehan ("Meehan") and Robert W. Fink are attorneys who formed a partnership in January, 1975, with their principal place of business in the Town of Goshen, County of Orange, New York State. Between December, 1973 and September, 1975, plaintiffs performed professional services for defendants. Plaintiffs allege for their first cause of action in their Amended Complaint, dated April 1, 1976, that defendants agreed to pay plaintiffs the reasonable value of their services together with disbursements, and that the sum of $14,339.26 is due and owing to plaintiffs for legal services rendered on defendants' behalf.

The second cause of action is that of plaintiff Meehan against defendant Judy Snow whereby plaintiff alleges that his good reputation as an attorney and his practice in the Town of Goshen, County of Orange, and surrounding counties were injured in that:

"[O]n or about the 28th day of July, 1975, defendant Judy Snow, while in the presence of James Mari and Helen Mari in the Town of Chester, County of Orange, State of New York, and referring to John Meehan's work in behalf of Judy Snow and John Snow, stated: that 'He is incompetent', that 'He messed up the sale of the house property to the owner of the Montgomery Nursing Home', and that 'We lost $100,000 because of John Meehan', that 'He really screwed everything

---

1. Defendants' motion to vacate the default was denied by Judge Henry Werker in a Memorandum Decision filed July 22, 1977.

up', and that 'He goofed everything up'." [2]

Plaintiff alleges that the above-quoted words are false and defamatory and "were known to the defendant Judy Snow to be false and defamatory and were spoken recklessly, carelessly, willfully and maliciously and with intent to damage plaintiff's good name and reputation as an attorney." [3]

The third cause of action is that of plaintiff Meehan against defendant John Snow whereby plaintiff alleges that his good reputation as an attorney and his practice in the Town of Goshen, County of Orange, and surrounding counties were injured in that:

"[O]n or about the 7th day of October, 1975, the defendant John Snow, while in the presence of Martyn Taub, Esq., and Arthur Kabinoff in the Village of Suffern, Town of Ramapo, County of Rockland, State of New York, and referring to John Meehan's work in behalf of John Snow and his wife, Judy Snow, stated: that 'When John should have been doing the job he was probably out playing golf', that 'When he should have been doing the job, John told me he was out of town with his wife', and that 'He was probably out drinking because he sounded like he didn't know what he was talking about whenever I spoke with him', and 'Whenever I spoke with John he sounded like he was drinking; he didn't seem to remember from one time to the next what he said.' " [4]

Plaintiff alleges that the above-quoted words are false and defamatory and "were known to the defendant John Snow to be false and defamatory, and were spoken recklessly, carelessly, willfully and maliciously and with intent to damage plain-

tiff's good name and reputation as an attorney." [5]

By his Amended Complaint, plaintiff Meehan requests compensatory and punitive damages as against defendants John Snow and Judy Snow. [6]

*Prior Proceedings*

The Amended Complaint in this action was served on defendants' attorney on September 15, 1976. The defendants' Answer to the Amended Complaint was not timely served. Accordingly, plaintiffs moved for leave to enter a default judgment against defendants. The Honorable Henry F. Werker, in his Memorandum Decision, dated February 2, 1977, granted plaintiffs' motion for leave to file a default judgment and granted defendants thirty days within which to move to set aside their default. Defendants' motion pursuant to Rule 60(b)(1) to set aside the default judgment was denied by Judge Werker in his Memorandum Decision, filed July 22, 1977, on the grounds that defendants' counsel did not show excusable neglect such as to merit vacating the default.

The judgment entered on March 7, 1977, disposed of the first cause of action by directing that payment be made to plaintiffs for a specific sum of money. Said judgment further directed that a hearing be set to determine the damages claimed by plaintiff Meehan as to the second and third causes of action alleging defamation. By a Memo Endorsement, dated October 11, 1977, and a subsequent Order dated October 14, 1977, plaintiffs were stayed from causing execution and enforcement on the judgment as to the first cause of action until the entry of a final judgment on the second and third causes of action. [7]

2. Amended Complaint, para. 16.

3. *Id.,* para. 17.

4. *Id.,* para. 21.

5. *Id.,* para. 22.

6. *Id.,* Wherefore Clause.

7. This stay was precipitated by defendants' filing of a Notice of Appeal which was thereafter withdrawn following a conference with Nathaniel Fensterstock, Staff Counsel to the Circuit Court of Appeals, on October 7, 1977, wherein defendants were informed that their appeal was premature and interlocutory because final judgment on all causes of action had not yet been entered. (Affidavit of Donald B. Rosenberg, dated August 18, 1977, in support of Order to Show Cause with a Stay, filed August 31, 1977.)

On December 12, 1977, Judge Werker ordered that this action be referred to Magistrate Sol Schreiber for purposes of conducting an inquest to determine damages on the second and third causes of action.

By an Order filed June 1, 1978, this action was reassigned to Judge Robert W. Sweet. On August 7, 1978, this action was reassigned to this Court. By an Order dated February 2, 1979, this Court referred this action to Magistrate Harold J. Raby for purposes of conducting an inquest as to damages on the second and third causes of action as set forth in the default judgment as amended on October 14, 1977.[8]

### The Magistrate's Report

Pursuant to the directions of this Court, Magistrate Raby conducted an inquest on June 11, 1979. As the Magistrate correctly noted in his Report, there were two issues presented to the Court at the inquest: "(a) whether the plaintiff is entitled to compensatory and/or punitive damages, and (b) in the event of such entitlement, what would be a fair and just amount of damages to be imposed." (Report, p. 1.) Based on the record, testimony and evidence adduced at the inquest, Magistrate Raby recommended the following:

(1) that the words uttered by defendants and quoted in the Amended Complaint constitute slander *per se* because they impute to plaintiff Meehan conduct which is incompatible with the proper performance of plaintiff's conduct as a member of the bar and as a practicing attorney, *citing Sanderson v. Caldwell*, 45 N.Y. 398, 405 (1871); *Handelman v. Hustler Magazine, Inc.*, 469 F.Supp. 1048, 1051 (S.D.N.Y.1978); *Weber v. Credit Office*, 55 Misc. 386, 106 N.Y.S. 583 (Sup.Ct., N.Y.Co.1907).[9]

(2) that because plaintiff is not able to prove any ascertainable damage as a result of the slander, the Magistrate recommended an award of the sum of one dollar in compensatory damages, *citing Handelman v. Hustler Magazine, Inc.*, supra (Report, pp. 5–6);

(3) that the egregious nature of the defendants' actions warrants an award of substantial punitive damages—defendants' having admitted by defaulting that the words uttered were spoken "recklessly, carelessly, willfully and maliciously and with intent to damage plaintiff's good name and reputation as an attorney",[10] being the basis for express malice—and though the Magistrate had no evidence of defendants' net worth,[11] the Magistrate recommended an award of $35,000 in punitive damages as against defendant John Snow and $15,000 in punitive damages as against defendant Judy Snow.[12]

### Objections to the Magistrate's Report

Defendants Judy Snow and John Snow object to the Magistrate's recommendation on the grounds, that *inter alia*,[13] punitive damages should not have been

---

**8.** Magistrate Schreiber resigned in the interim.

**9.** Report, pp. 2–4. The Magistrate further dismissed defendants' argument that the conduct alleged comes within the "single instance rule", whereby charging a professional person of being guilty of a mistake or unprofessional conduct in a single instance does not imply general unfitness. The Magistrate held that this contention in this instance is without legal merit, noting that "where the alleged deviation from conduct shows a lack of character or total disregard of professional ethics, the rule has been expressly held inapposite." *Citing November v. Time, Inc.*, 13 N.Y.2d 175, 244 N.Y. S.2d 309, 194 N.E.2d 126 (1963).

**10.** Amended Complaint, paras. 17 and 22.

**11.** The Magistrate duly noted "that an award of exemplary damages was not necessarily improper despite the *lack* of proof of net worth". Report, p. 8 (original emphasis), *citing Zarcone v. Perry*, 572 F.2d 52 (2d Cir. 1978).

**12.** Report, pp. 7–10. The sole fact which the Magistrate had before him which supports the inference that defendants are people of substance is the statement in the Amended Complaint that defendants "lost $100,000 because of John Meehan" in connection with a real estate transaction (Amended Complaint, para. 16).

**13.** Because of the conclusion reached herein, this Court need not determine the defendants' net worth as it relates to the punitive damages recommended by the Magistrate.

awarded in the absence of a showing by plaintiff of defendants' actual or express malice, reckless disregard for the truth or intentional ill will, which is a prerequisite to awarding punitive damages under New York law.[14]

### Discussion of the Law

■ This Court affirms Magistrate Raby's Report where it concludes that the words uttered by defendants and quoted in the Amended Complaint constitute slander *per se* because they impute to plaintiff Meehan conduct which is incompatible with the proper performance of plaintiff's conduct as a member of the bar and as a practicing attorney. The effect of the entry of the default judgment is to establish as proven all well pleaded allegations. *T.W.A., Inc. v. Hughes,* 449 F.2d 51, 63 (2d Cir. 1971), *rev'd on other grounds,* 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973), *reh'g den.,* 410 U.S. 975, 93 S.Ct. 1434, 35 L.Ed.2d 707. This Court deems paragraphs 16 and 21 of the Amended Complaint—which set forth the alleged slanderous statements of defendants—to be "well pleaded" such that they may be deemed true.

■ A default is only conclusive as to liability, however, and under New York law a defendant does not admit to damages by defaulting. *See, e. g., Wine Antiques, Inc. v. St. Paul Fire and Marine Insurance Co.,* 40 A.D.2d 657, 336 N.Y.S.2d 550 (1st Dep't 1972). It is for the Court to determine whether the relief requested flows from the facts. *Crantson v. Walton—164th Street Corp.,* 115 N.Y.S.2d 331, 332 (Sup.Ct., Bronx Co. 1952). A judgment granted without assessing plaintiff's right to relief requested is a nullity. *See, e. g., O'Connell v. Schumer,* 266 A.D. 138, 41 N.Y.S.2d 279 (1st Dep't 1943); *Rappazzo v. Nardacci,* 20 Misc.2d 301, 198 N.Y.S.2d 357 (City Ct., Albany 1959).

Accordingly, this Court modifies the Magistrate's Report with regard to (a) compen-

satory damages and (b) punitive damages as follows:

### (a)
### Compensatory Damages

■ In plaintiffs' post-inquest Memorandum of Law, plaintiff argues that he should be entitled to damages in an action for slander *per se* and that he does not have to prove actual injury. This Court agrees. It is well established in New York case law that words which are slanderous *per se* are presumed to damage one's reputation and business. *See, e. g., Buckley v. Littell,* 394 F.Supp. 918 (S.D.N.Y.1975), *aff'd in part, rev'd in part,* 539 F.2d 882 (2d Cir. 1976), *cert. den.,* 429 U.S. 1062, 97 S.Ct. 786, 50 L.Ed.2d 777 (1977); *Lady Windsor Hairdressers, Inc. v. Calvo,* 35 Misc.2d 739, 231 N.Y.S.2d 221 (Sup.Ct., Queens Co. 1962). It is assumed that slander causes some damage though it may be nominal. *See, e. g., Wood v. Lee,* 41 A.D.2d 730, 341 N.Y.S.2d 738 (1st Dep't 1973).

■ Nominal compensatory damages may be granted on a default judgment in an action for slander *per se*. In a similar action, Judge Levet of this District Court awarded general damages after defendants defaulted in *Robinson v. Bantam Books, Inc.,* 339 F.Supp. 150 (S.D.N.Y.1972). In so doing, Judge Levet followed the reasoning of the Court in *Walrus Manufacturing Co. v. Excel Metal Cabinet Co.,* 161 F.Supp. 840 (W.D.N.Y.1957). The Court's reasoning in *Walrus* is readily applicable to the instant action:

> "[D]amages are presumed to flow from libel . . . and a plaintiff need not offer proof of any damage but is entitled to recover for the injury to his reputation
>
> . . . .
>
> \* \* \* \* \* \*
>
> In actions for other torts, there is generally to be found some standard by which the reasonableness of an award of damages may be tested, but it is seldom so in

---

**14.** Plaintiffs are citizens of New York, the defamation took place in New York, and all parties to this action do not dispute that the law of the State of New York applies. The State of New York has the "paramount interest". *See, e. g., Neumeier v. Kuehner,* 31 N.Y.S.2d 121, 335 N.Y. S.2d 64, 286 N.E.2d 454 (1972).

an action for libel and slander where the elements of wounded sensibilities and loss of public esteem play a part. [Citations omitted.] The right, as a matter of law, to compensatory damages, however, does not imply a right to substantial damages. Substantial compensatory damages must be founded upon a finding of substantial injury. . . . [W]here words are libelous upon their face, general damages are inferred by law and need not be proved by evidence."

161 F.Supp. at 843–844.

■ Plaintiff Meehan testified at the inquest hearing, that when he heard what had been said he was "upset and disturbed and angry" and the defamation caused him "a great deal of grief and distress personally."[15] Plaintiff Meehan further testified that after Judy Snow had made the statements set forth in paragraph 16 of the Amended Complaint to James and Helen Mari, James and Helen Mari never asked plaintiff Meehan to do any more legal work for them.[16] Accordingly, this Court finds that plaintiff Meehan's self-esteem was injured, and that he is entitled to at least general damages on this basis.

■ The right to general damages for slander per se does not imply, however, a right to substantial compensatory damages.[17] Plaintiff Meehan seeks compensatory damages in the amount of $500,000 as

against defendant Judy Snow and $500,000 as against defendant John Snow. Yet, plaintiff Meehan testified that his income increased in 1976 (the year after the alleged slander), and that it further increased in 1977.[18] The first indication of a decline in income is 1978, three years after the slander.[19] Plaintiff Meehan was unable to be specific as to the nature and extent he had lost business as a result of the slander, and he did not present any witnesses who could testify that they did not come to him because of the slander.[20] Further, plaintiff was unable to demonstrate that he was so upset by the slander that his health or work suffered from it.[21]

Accordingly, plaintiff Meehan is entitled to general damages in the amount of $1,000 as against defendant Judy Snow and to general damages in the amount of $1,000 as against John Snow based on similar findings and awards of damages in slander per se actions brought in New York.[22]

(b)

*Punitive Damages*

■ The awarding of punitive damages is not a matter of right but rather it is a matter within the sound discretion of the trier of fact. *See, e. g., Flaks v. Koegel,* 504 F.2d 702, 707 (2d Cir. 1974); *Hilliard v. Williams,* 516 F.2d 1344, 1350 (6th Cir. 1975).[23] Furthermore, the amount of puni-

---

**15.** Transcript of Inquest Hearing before Magistrate Harold J. Raby, on June 11, 1979, page 34 (hereinafter "Tr.").

**16.** Tr., pages 39–40.

**17.** *Walrus Manufacturing Co. v. Excel Metal Cabinet Co., supra,* 161 F.Supp. at 844.

**18.** Tr., page 47.

**19.** Tr., page 46.

**20.** Plaintiff Meehan admitted that James and Helen Mari never said that they did not want him to do legal work because of Judy Snow's remark. Tr., page 40. Plaintiff testified, as to his alleged loss of business as follows: "I can't pinpoint it. I don't know exactly. . . . You see, you are a professional. You know there is certain business that normally you get, you are going to get it, for one reason or another, that certain clients will come to you, and suddenly they are not there." Tr., page 45.

**21.** Tr., pages 36, 39.

**22.** *See, e. g., Laskowski v. County of Nassau,* 57 A.D.2d 888, 394 N.Y.S.2d 442 (2d Dep't 1977) (where Court found that award of $4,500 in action where plaintiff was accused of being a prostitute in front of one person was excessive insofar as it exceeded $2,000); *Cohen v. Eisenberg,* 173 Misc. 1089, 19 N.Y.S.2d 678 (Sup.Ct., N.Y.Co.), *aff'd,* 260 App.Div. 1014, 24 N.Y.S.2d 1004 (1st Dep't 1940) (where Court awarded $1,500 for falsely uttering in meat market, in presence of others, that non-kosher meat and goods were sold there and said damages were not excessive, said words being actionable *per se* because "they tended to injure plaintiffs in their business", 19 N.Y.S.2d at 682).

**23.** The defendants-appellees Williams and Clark made separate applications of writs of certiorari resulting in determinations as follows: *cert. den., Clark v. Hilliard,* 423 U.S.

tive damages awarded depends on the degree of malice or wanton and willful conduct of the defendant. *See, e. g., Flaks v. Koegel, supra; Wegner v. Rodeo Cowboys Association*, 290 F.Supp. 369, 372 (D.Colo. 1968), *aff'd*, 417 F.2d 881 (10th Cir. 1969), *cert. den.*, 398 U.S. 903, 90 S.Ct. 1688, 26 L.Ed.2d 60 (1970).

In a defamation action, proof of actual or express malice is necessary to support an award of punitive damages. *See Frechette v. Special Magazines, Inc.*, 285 A.D. 174, 175, 136 N.Y.S.2d 448, 450–451 (3d Dep't 1954). As the Court in *Frechette* explained:

> "Actual malice may be proven by showing acts or utterances or other publications of the defendant which display hatred, spite or ill will toward the plaintiff and, in some cases, it may be implied from the falsity of the publication itself. . . . The equivalent of actual malice may consist of publishing a libel with such negligence and carelessness as to indicate a wanton or reckless disregard of the rights of others."

285 A.D. at 175, 136 N.Y.S.2d at 451 (citations omitted). Punitive damages may not be awarded in a case where there is only negligence or poor judgment on the part of the defendant. *Nunan v. Bullman*, 256 A.D. 741, 742, 12 N.Y.S.2d 51, 53 (3d Dep't 1939).

Accordingly, this Court declines to award punitive damages based on the record which is without a scintilla of evidence that defendants knew or believed what they were saying was false. This Court only has the allegations in the complaint before it, and punitive damages are not liquidated or computable even on the basis of a well pleaded complaint. *Flaks v. Koegel, supra*, 504 F.2d at 707. The Court in *United States ex rel. Motley v. Rundle*, 340 F.Supp. 807 (E.D.Pa.1972), dealt with the identical problem of a request for punitive damages arising out of claims on which defendant had defaulted, and it reasoned as follows:

> "Plaintiff has also requested punitive damages. However, at some point the realities of this being an award of damages based on a default judgment must be realized. On the one hand, plaintiff should not be penalized because he has won a judgment by default rather than by a trial on the merits. The court is not free to speculate on whether the claim really has merit, but should treat the default judgment as if there has been a decision on the merits. On the other hand, the court recognizes that punitive damages are to be awarded only in cases of malicious actions in gross disregard of a plaintiff's rights. [Citations omitted.] There was no evidence at the damage hearing of any malicious or outrageous behavior on the part of the defendants. Plaintiff cannot simply rely on the default judgment with its necessary admission by the defendants of [the claims in the complaint]. This is particularly so, since one function of punitive damages is its deterrent impact on the defendant to curb future violations. *See Sostre v. McGinnis*, 442 F.2d 178 (C.A. 2, 1971). Therefore, the plaintiff will not be awarded any punitive damages."

340 F.Supp. at 811. This reasoning is equally applicable to the issue at bar.

In a similar manner, the plaintiff's arguments and the Magistrate's reasoning to the contrary are not persuasive.

Plaintiff cites several cases in support of the argument that actual malice may be inferred from the words themselves. These cases include *Reynolds v. Pegler*, 123 F.Supp. 36 (S.D.N.Y.1954), *aff'd*, 223 F.2d 429 (2d Cir. 1955), *cert. den.*, 350 U.S. 846, 76 S.Ct. 80, 100 L.Ed. 754; *Corrigan v. Bobbs-Merrill Company*, 228 N.Y. 58 (1920); and *Amory v. Vreeland*, 125 A.D. 850, 110 N.Y.S. 859 (1st Dep't 1908). All of these cases involve libel—as opposed to slander. The printed words of the respective actions were before the Court and the jury. In the instant case, plaintiff is suing on oral state-

1066, 96 S.Ct. 805, 46 L.Ed.2d 656 (1976), and *cert. granted and judgment vacated and case* *remanded on other grounds*, 424 U.S. 961, 96 S.Ct. 1453, 47 L.Ed.2d 729 (1976).

ments which he learned through others. The words set forth in the Amended Complaint are hearsay, though they are accepted as fact by the operation of the default judgment. Moreover, all of the above cases cited by plaintiff are instances where the cases were tried by a jury; none of them involve a default such as the present action. Therefore, this Court does not deem them to be controlling on the question of punitive damages.

 The Magistrate reached an opposite result basing his finding of "actual malice" on two theories:

(1) that the actual malice required may be discovered in the words themselves, by their being of such a nature as to impute a degree of wrongdoing which warrants castigation; and

(2) that by virtue of the default judgment rendered against them, the defendants have admitted that "the words so spoken were false and defamatory, . . . and were spoken recklessly, carelessly, willfully and maliciously and with intent to damage plaintiff's good name and reputation as an attorney." (Amended Complaint, paras. 17 and 22.)

A conclusion that punitive damages can be allowed on either of these theories is, however, contrary to the underlying principles of punitive damages. In order to award punitive damages "[t]here must be a showing of *malice in fact* as distinguished from *malice in law.*" 14 N.Y.Jur.Rev. Damages § 179, at p. 39 (emphasis supplied). Punitive damages are intended "to punish the defendant and to restrain him and others from doing like acts in the future, and unless a wrongful motive exists, or there was wilful and intentional misdoing, or a reckless indifference equivalent thereto, there is no basis for an award of such damages." 14 N.Y.Jur.Rev. Damages § 179, at p. 38. Thus, the purpose of punitive damages cannot be served unless there is some showing that they are deserved. In this case, the only evidence plaintiff produced at the inquest was character evidence tending to show that the statements made

by defendants were untrue. Nothing was produced which showed that defendants believed them to be untrue. Defendants' remarks are obviously based on their own experience in retaining plaintiff as their attorney. The tone of the remarks allegedly made by defendants is that they were unhappy with the way their legal problems were resolved and they blame plaintiff, who was their attorney. No award for punitive damages should be made in a defamation action where the defendant has defaulted if plaintiff has "produced no evidence upon the basis of which the Court can determine that either of the defendants was chargeable with actual malice." *Campanella v. Pursley*, 25 Misc.2d 54, 57, 202 N.Y.S.2d 539, 543 (Sup.Ct., Nassau Co. 1960). To find otherwise would be contrary to the meaning of a default judgment—*i. e.*, that it is only conclusive as to liability and does not constitute an admission as to damages. *See, e. g., Wine Antiques, Inc. v. St. Paul Fire and Marine Insurance Co., supra.*

### Conclusion

Accordingly, this Court hereby awards plaintiff Meehan $1,000 general compensatory damages as against defendant Judy Snow and $1,000 general compensatory damages as against defendant John Snow. The evidence does not support an award of punitive damages, and accordingly this Court exercises its discretion to deny award of such damages.

IT IS SO ORDERED. SUBMIT JUDGMENT.