Labib ISMAIL, Plaintiff,

v.

Scott COHEN, individually and as a New York City police officer, and City of New York, a Municipal Corporation, Defendants.

No. 85 Civ. 0121 (PKL).

United States District Court, S.D. New York.

May 3, 1989.

Robert L. Herbst, New York City, for plaintiff.

Law Dept. of the City of New York, Corp. Counsel, New York City (Gabriel Taussig, Jane L. Gordon, Lisa S.J. Yee, of counsel), for defendants.

1. The Court, in an opinion dated February 7, 1989, 706 F.Supp. 243 (S.D.N.Y.) severed plaintiff's § 1983 claim against the City of New York.

## ORDER & OPINION

LEISURE, District Judge:

This action was tried to a jury over seven days in late February and early March of 1989. The jury returned a verdict for plaintiff in the amount of $650,000 in compensatory damages against both defendants and $150,000 in punitive damages against Officer Scott Cohen ("Cohen" or "Officer Cohen"). Accordingly, plaintiff was awarded $800,000 by Judgment No. 89,0561. On March 31, 1989, counsel for defendants moved, on the alternative grounds, for judgment notwithstanding the verdict, a new trial on all issues, or for a remittitur. For the reasons stated below, the motions for judgment n.o.v. and for a new trial are denied, and the motion for a remittitur is granted.

## FACTUAL BACKGROUND

A brief statement of the facts suffices for the purposes of this motion. This is a civil rights action under 42 U.S.C. § 1983 against Officer Scott Cohen [1] ("Cohen") of the New York City Police Department and under 42 U.S.C. § 1981 against Officer Cohen and the City of New York (the "City").[2] Plaintiff claims that at approximately 8 a.m. on October 11, 1983, he attempted to move his automobile from its parked location in front of his residence at 105 West 55th Street, New York City. While plaintiff was allegedly having difficulty starting his vehicle, he was approached by defendant, Officer Scott Cohen of the New York City Police Department. Officer Cohen was in uniform and on duty. Officer Cohen informed plaintiff that he was parked illegally, and began to issue a summons for the violation. Plaintiff attempted to persuade Officer Cohen not to issue the summons. When this proved ineffective, plaintiff turned to ask a bystander if he would be a witness to what was occurring. At this point, according to plaintiff, defendant Cohen allegedly assaulted plaintiff; and it is undisputed that

2. The City's liability under § 1981, as well as under the various state law claims is based solely on *respondeat superior*. *See* Order & Opinion dated February 7, 1989.

Officer Cohen arrested him on charges of assault, harassment, disorderly conduct, obstructing governmental administration and resisting arrest. Subsequently, plaintiff was acquitted of all charges.

In addition to his § 1983 claim, plaintiff asserted that the acts and conduct of defendant Cohen constituted various violations against him under New York law, consisting of assault, battery, false arrest, intentional infliction of emotional distress, abuse of process, *prima facie* tort, negligence and gross negligence. As previously stated, the state law claims were presented against the City under the *respondeat superior* theory.

At the close of plaintiff's case, counsel for plaintiff withdrew the claims for *prima facie* tort, negligence and gross negligence. The jury returned a verdict for plaintiff on all claims, including the § 1983 claim against Cohen, but found for defendants as to plaintiff's claim of discrimination under § 1981 and his state law claim of assault.

## DISCUSSION

### I. JUDGMENT NOTWITHSTANDING THE VERDICT

■ The standard for granting judgment n.o.v. is well established, and has recently been reiterated by the Second Circuit:

> Judgment n.o.v. should be granted only when
>
> > (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or
> >
> > (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded people could not arrive at a verdict against him.

*Bauer v. Raymark Industries, Inc.*, 849 F.2d 790, 792 (2d Cir.1988) (*quoting Mallis v. Bankers Trust Co.*, 717 F.2d 683, 688–89 (2d Cir.1983)). *See also Benjamin v. United Merchants & Manufacturers, Inc.*, 873 F.2d 41 (2d Cir.1989); *Mattivi v. South African Marine Corp., "Huguenot"*, 618 F.2d 163 (2d Cir.1980).

Defendants urge here that judgment n.o.v. should be granted as there was a complete lack of evidence to support plaintiff's claims. Specifically, defendants contend that judgment n.o.v. is appropriate in this case as there was allegedly no evidence to support: (1) plaintiff's excessive force and battery claims under § 1983 and state law respectively; (2) the showing of intent required under § 1983; (3) a finding that Officer Cohen did not have probable cause to arrest plaintiff; (4) a finding that Officer Cohen was not entitled to qualified immunity; (5) a showing of malice to support a claim for malicious prosecution; and (6) an award of punitive damages.

The Court notes that in applying the above standards, it must examine the evidence and inferences reasonably to be drawn therefrom in the light most favorable to the prevailing party, *H.L. Moore Drug Exchange v. Eli Lilly & Co.*, 662 F.2d 935, 937 (2d Cir.1981), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982), and should not assess the weight of conflicting evidence, pass on the credibility of witnesses or substitute its judgment for that of the jury. *See Proteus Books Limited v. Cherry Lane Music Co.*, 873 F.2d 502 (2d Cir.1989); *Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363 (2d Cir. 1988); *Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966, 970 (2d Cir.1987).

The Court will not further burden an already extensive record with a detailed recitation of all the facts which support plaintiff's claims. The Court determines that the record contains sufficient evidence for a finding of liability on all of the claims for which the jury returned a verdict for plaintiff. *See generally* Tr. 222–262 (finding of lack of probable cause and no qualified immunity); Tr. 72, 82–95 (excessive force and battery claims); Tr. 72, 82, 95, 402–406 (showing of intent and malice). Defendants' contentions depend on a version of the facts which the jury clearly rejected. In sum, there was sufficient evidence to support plaintiff's claims and therefore defendants' motion for judgment n.o.v. is denied.

## II. NEW TRIAL

The standard for a new trial under Rule 59(a) is considerably less stringent than that applied on a motion for entry of judgment n.o.v. *See Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966, 970 (2d Cir.1987). The Court has the power to order a new trial if it believes the verdict was against the weight of the evidence. *See, e.g., Isley v. Motown Record Corp.*, 69 F.R.D. 12 (S.D.N.Y.1975). Although the question is a close one, the Court finds that the jury's verdict was not against the weight of the evidence so that a new trial would be required.

However, a court may grant a new trial for reasons other than a verdict against the weight of the evidence. Among these are trial error in rulings on admissibility of evidence and other claims of unfairness. Defendants here posit two such errors: (1) the admission of testimony concerning the "Castaldo" incident; and (2) the refusal to admit the Civilian Complaint Review Board ("CCRB") record concerning the Castaldo incident.

### 1. *Admission of the Castaldo Incident*

 Defendants contend that the admission of evidence concerning the Castaldo incident under Fed.R.Evid. 404(b) was improper, and so prejudicial as to require a new trial. In an Opinion & Order dated February 7, 1989, this Court held, after extensive analysis, that this evidence was admissible to show both a relevant pattern and intent under Fed.R.Evid. 404(b). The testimony at trial fully supported this Court's decision to admit evidence of the Castaldo incident. (Tr. 387–400). Moreover, the Court gave cautionary instructions to the jury at several different points during the trial to emphasize the limited role for which this evidence could be considered. (Tr. 385, 391, 400). *See, Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988); *United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir.), *cert. denied*, 474

U.S. 825, 106 S.Ct. 82, 88 L.Ed.2d 67 (1985). Accordingly, the admission of this evidence does not require a new trial.

### 2. *Opportunity for Cross–Examination*

 Defendants additionally contend that the Court improperly limited the cross-examination of Angelo Castaldo ("Castaldo") by refusing to permit impeachment of his credibility and memory by use of the Castaldo Civilian Complaint Review Board record. DX Z. However, the trial record reveals that, during cross-examination of Castaldo, defense counsel made no effort to use the CCRB record to impeach Castaldo, or to elicit any of the matters which were allegedly reflected in that document. Thus, defendants never laid the proper foundation for the introduction of any of the allegedly inconsistent statements contained in the CCRB record.

Moreover, the trial record reveals that no portion of the CCRB record was actually admitted into evidence. During cross-examination of Officer Cohen, Officer Cohen's attention was properly called to certain statements contained in the CCRB record in an effort to impeach his testimony. However, the document itself was not admitted into evidence and certain portions of the statements were read to Officer Cohen at the specific request of defense counsel. Tr. 588–91.

Subsequently, at the conclusion of defendants' case, defense counsel sought to have admitted into evidence the complete records of the CCRB complaint concerning the Castaldo incident. This exhibit was not listed in the pretrial order and was offered under Fed.R.Evid. 106. The Court denied defense counsel's request. (Tr. 765).

The Court's rulings with respect to the CCRB record, which was never marked as a defense exhibit in the pretrial order [3] (Tr. 765), were correct. Motions to reopen or to modify a pretrial order are addressed to the sound discretion of the trial judge. *Bradford Trust Co. v. Merrill, Lynch,*

---

**3.** Three documents from the CCRB file relating to the Castaldo incident were marked as plaintiff's exhibits 7(a)–(c) in the pretrial order, however, the entire CCRB record was never listed as an exhibit in the pretrial order.

*Pierce, Fenner & Smith, Inc.*, 805 F.2d 49, 52 (2d Cir.1986). Moreover, no specific offer of proof, nor showing of "manifest injustice," was made at the time this exhibit was offered. (Tr. 765). There is no ground here for a new trial.

## III. REMITTITUR

Remittitur is the process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial. *Shu–Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45, 49 (2d Cir.1984); 6A J. Moore, *Moore's Federal Practice* ¶ 59.08[7] (2d ed. 1983). The practice is usually employed where the award is "intrinsically excessive" in the sense that it is greater than a reasonable jury could possibly have awarded. *Shu–Tao*, 742 F.2d at 49. Where an award is so excessive as to "shock the judicial conscience," *United States ex rel. Larkins v. Oswald*, 510 F.2d 583, 589 (2d Cir.1975), the Court may reduce the award. *Petramale v. Local No. 17 of Laborers' International Union of North America*, 847 F.2d 1009, 1012–13 (2d Cir.1988); *Dagnello v. Long Island Rail Road Co.*, 289 F.2d 797, 806 (2d Cir.1961) ("[S]urely there must be an upper limit, and whether that has been surpassed is not a question of fact with respect to which reasonable men may differ but a question of law."). In this case, the Court concludes that the jury's award was unconscionably high, and the Court is compelled to offer plaintiff the option of remitting the excessive portion of the jury's award or retrying the case.

It is well settled that the Court must accord substantial deference to the jury's determination of factual issues. *Martell v. Boardwalk Enterprises, Inc.*, 748 F.2d 740 (2d Cir.1984). The Court therefore accepts the jury's findings that defendant Cohen violated plaintiff's federal and state law rights. But, even considering these findings, the verdict was beyond what a reasonable jury could have returned for plaintiff if it followed the Court's instructions.

The damage award in the present case consisted of compensation for personal injury, including humiliation and injury to reputation, and pain and suffering. Plaintiff was also awarded punitive damages against Officer Cohen. The Court will briefly summarize the evidence concerning damages.

After the altercation described earlier, plaintiff was arrested by Officer Cohen. Plaintiff testified that he was handcuffed so tightly he felt heat in his hands from blood. Tr. 82. Plaintiff requested the handcuffs be loosened, however, this request was denied. Upon reaching the stationhouse, plaintiff complained that he was having a heart attack. Tr. 538. Plaintiff was taken to the hospital, Tr. 538, but he refused medical care. Tr. 162. After returning to the stationhouse, plaintiff again requested to be taken, and was taken to Bellevue hospital ("Bellevue"). Tr. 96.

The records from plaintiff's visit to Bellevue on October 11, 1983, reflect that plaintiff initially complained of chest pain. PX 13. Subsequently, plaintiff complained of loss of consciousness and various aches. Despite these complaints, the Bellevue staff did not deem plaintiff's condition sufficiently serious to merit any treatment, medication, or physical therapy. PX 13. After examining plaintiff's x-rays, plaintiff was released from Central Booking, and eventually arraigned. He claimed to have spent somewhere between 60 and 72 hours in custody. Tr. 96. Three months after his release, plaintiff once again visited the Bellevue Hospital emergency room. Tr. 163. However, no treatment was administered. Plaintiff was referred to the hospital's chest clinic for a condition unrelated to the events surrounding the arrest.

The following month, plaintiff stood trial for obstructing governmental administration, resisting arrest, and harassment and was acquitted. Tr. 53.

Plaintiff testified that these events caused him numbness in the tips of his hands, pain in his "pointer," an inability to hold a pen for more than two or three minutes, pain in his arm, shoulder and neck, a headache in his eye and skull. Tr. 104. Additionally, plaintiff alleged he had incurred indigestion, irritability, nervousness, an inability to carry a briefcase, and a

decline in his memory. Tr. 105. Plaintiff contended a loss of patience, which led to the end of his engagement with his girlfriend, a changed business personality, and a changed business attitude. Tr. 106. He also testified that he had difficulty sleeping, cried, and was embarrassed because people he knew may have seen or heard of him being arrested, although he did not present evidence to prove that they did. He also testified that his arrest prompted the end of a business venture. Tr. 106–07. However, plaintiff did not seek any medical or mental health treatment for any of these alleged problems. Tr. 165, 167, 169, 170. Rather, plaintiff testified that he sometimes took aspirin for his injuries. Tr. 104.

Plaintiff was examined by three doctors who testified at trial. Dr. Arved Iserlis ("Iserlis") and Dr. Seymour Block ("Block"), both testified for plaintiff. Dr. Mortimer Shapiro ("Shapiro") testified for defendants. Dr. Block, after examining plaintiff once, nineteen months after the incident, testified that plaintiff was suffering from Post Traumatic Stress Disorder, evidenced by "emotional numbness." Tr. 294. Dr. Iserlis testified that plaintiff suffered from nerve root irritation, Tr. 346, cervical radiculopathy, Tr. 349, myofascial pain syndrome related to cervical radiculopathy, Tr. 349–50, thoracic outlet syndrome and post-traumatic reflex sympathetic dystrophy, Tr. 350, an acute and recent rib fracture, Tr. 362, and, "maybe" carpal tunnel syndrome. Tr. 346. Dr. Iserlis testified that the symptoms would continue for an indefinite period of time and that during this time there would be periods of remission. Tr. 351. Neither Dr. Iserlis, Dr. Block, nor any other doctor ever treated Ismail. Tr. 167–169.

In order to determine whether a particular award is excessive, courts have found it useful to review awards in other cases involving similar injuries, while bearing in mind that any given judgment depends on a unique set of facts and circumstances. *Nairn v. National R.R. Passenger Corp.,* 837 F.2d 565, 568 (2d Cir.1988). No other recent award of damages in a § 1983 action has been upheld on appeal in this Circuit which comes close to approximating the magnitude of the amounts awarded in this case for the injuries and conduct involved. *See, e.g., O'Neill v. Krzeminski,* 839 F.2d 9 (2d Cir.1988); *Fiacco v. City of Rensselaer,* 783 F.2d 319 (2d Cir.1986), *cert. denied,* 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987); *Wheatley v. Ford,* 679 F.2d 1037 (2d Cir.1982); *Zarcone v. Perry,* 572 F.2d 52 (2d Cir.1978).

In *O'Neill v. Kreziminiski,* 839 F.2d 9 (2d Cir.1988), the jury's awards of $80,000 in compensatory and $125,000 and $60,000, respectively were affirmed as to two New Haven police officers for their use of excessive force. *O'Neill, supra,* 839 F.2d at 13–14. The plaintiff there testified that he was struck three times on his head, dragged by the throat, and when he was finally taken to a hospital, he was treated for a fractured nose and lacerations to his face. *Id.* at 10. The compensatory damages award included plaintiff's claim for lost wages. *Id.* at 13. The amount of damages upheld in *O'Neill* is far less substantial then the $800,000 awarded in the present case, and for more significant injuries.

Cases arising in other circuits similarly illustrate the extravagance of the award in this case. For example, in *Wagenmann v. Adams,* 829 F.2d 196 (1st Cir.1987), plaintiff was unlawfully arrested and subsequently removed from police custody only to be involuntarily committed to a locked ward in a mental institution, where he was warned that the patients were not responsible for their actions. *Id.* at 216. The First Circuit affirmed an award of $285,000 in compensatory damages and punitive damages in the amount of $35,000 and $10,-000 against defendant police officers.

In *Bailey v. Andrews,* 811 F.2d 366 (7th Cir.1987), the Seventh Circuit found excessive an award of $55,000 in compensatory damages and $25,000 in punitive damages for a § 1983 action. The Court found insufficient plaintiff's proof of injury. There, as here, plaintiff had incurred no bills for treatment of his emotional or physical injuries. Plaintiff attempted to prove his emotional injuries by his own testimony concerning a change in personality and em-

barrassment. The Court held that $55,000 "is not a reasonable estimate of such an intangible loss when no effort at all is made to estimate an objective basis for quantifying the loss." *Id.* at 376 (*quoting Taliferro v. Augle,* 757 F.2d 157 (7th Cir. 1985)).

Plaintiff contends that the affirmance of the jury's award in *Spell v. McDaniel,* 824 F.2d 1380 (4th Cir.), *cert. denied sub. nom. Fayetteville v. Spell,* —— U.S. ——, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988), supports the amount of compensatory damages awarded in this case. In *Spell,* the Fourth Circuit upheld a compensatory award of $900,000 for the loss of a testicle, physical pain and suffering and sterility. The injuries involved in the present case pale in comparison to the gravity of the injuries in *Spell.*

The Second Circuit has noted that courts have become increasingly willing to review damages awards:

> There is no doubt that this trend is a response to the increasingly outrageous amounts demanded by plaintiffs and awarded by juries. A jury has very broad discretion in measuring damages; nevertheless, a jury may not abandon analysis for sympathy for a suffering plaintiff and treat an injury as though it were a winning lottery ticket.

*Nairn, supra,* 837 F.2d at 569 (*quoting Gumbs v. Pueblo International, Inc.,* 823 F.2d 768, 773 (3d Cir.1987)).

■ My review of these and other cases, as well as an examination of the facts in this case, leads to the conclusion that the jury's verdict in this case was excessive. Despite plaintiff's testimony of subjective pain and suffering, mental anguish and humiliation, as well as evidence of minor physical injuries, plaintiff never required treatment. Although plaintiff claimed his cultural background prevented him from seeking psychiatric care, this does not explain his failure to seek treatment for his purported physical injuries. Moreover, plaintiff's own expert testified that there would be periods of remission. Nor did plaintiff offer evidence which would have provided an objective basis to quantify his

claim of humiliation or other mental distress. The Court does not mean to belittle Ismail's pain and disappointment in no longer being able to fully trust police officers, or to minimize the very real impact of the injury on plaintiff's life. Nevertheless, the award of $650,000 for the injuries suffered in this case is unprecedented and "shocks the judicial conscience." Examining the unique facts in this case and comparing it with similar cases, the Court finds that compensatory damages in this case could not have exceeded $200,000.

■ Likewise, the punitive damage award in this action is so high "as to shock the judicial conscience" and constitute a denial of justice. As a general rule, punitive damages may be an integral part of the remedy in a civil rights action. *Zarcone v. Perry,* 572 F.2d 52 (2d Cir.1978). The purpose of awarding punitive damages is "to punish the defendant for his willful or malicious conduct and to deter others from similar behavior." *Memphis Community School District v. Stachura,* 477 U.S. 299, 306 n. 9, 106 S.Ct. 2537, 2542 n. 9, 91 L.Ed.2d 249 (1986); *see also Smith v. Wade,* 461 U.S. 30, 54, 103 S.Ct. 1625, 1639, 75 L.Ed.2d 632 (1983). Punitive damages are permitted when the defendant's conduct was "motivated by evil motive or intent, or ... reckless or callous indifference to the federally protected rights of others." *Smith, supra* at 56, 103 S.Ct. at 1640. Although, a punitive damage award need not be proportionally related to the actual harm suffered, it should bear some reasonable relationship to injury inflicted and the *mala fides* of a defendant. *Guccione v. Hustler Magazine, Inc.,* 632 F.Supp. 313, (S.D.N.Y.) *rev'd on other grounds,* 800 F.2d 298 (2d Cir.1986), *cert. denied,* 479 U.S. 1091, 107 S.Ct. 1303, 94 L.Ed.2d 158 (1987); *Meehan v. Snow,* 494 F.Supp. 690 (S.D.N.Y.1980).

As demonstrated above, the punitive damage award in the present case was unprecedented for the conduct here involved. *Cf. Hollins v. Powell,* 773 F.2d 191 (8th Cir.1985), *cert. denied,* 475 U.S. 1119, 106 S.Ct. 1635, 90 L.Ed.2d 181 (1986) (reduction of punitive damages in § 1983 ac-

tion against mayor from $500,000 to $2,000). While the Court finds the abuse of official power intolerable, it can see neither justice nor sense in affirming a verdict that is so clearly excessive. The Court has determined that actual damages could not have exceeded $200,000 and reduced the original award to that amount. The Court believes a reduction in punitive damages is also appropriate. The Court finds that punitive damages in this case could not have exceeded $1,000. This sum more than adequately punishes Officer Cohen and should serve to deter future similar conduct.

Accordingly, plaintiff is ordered to remit $599,000, or face a new trial on all issues.

## CONCLUSION

Defendants' motion for judgment notwithstanding the verdict is denied. Defendants' motion for a new trial is also denied. Defendants' motion for remittitur is granted. Plaintiff is hereby ordered to remit $599,000, or face a new trial on all issues. Plaintiff has 15 days from the date of this opinion to consent to the remittitur.

SO ORDERED.